INEZ A. BUSHNELL *vs.* MARK W. BUSHNELL.

First Judicial District, Hartford, October Term, 1925.

WHEELER, C. J., CURTIS, MALTBIE and HAINES, Js.

It is the established law of this State that the right of a wife to sue her husband in tort is the same as that of a third party, except as it is modified by statute or necessarily affected by the marriage relationship; and it therefore follows that a wife who sustains personal injuries as the result of her husband's negligence in the operation of his automobile, may maintain an action against him for damages.

Two or more persons are said to be engaged in a joint enterprise when the attainment of their common purpose requires that they use and occupy a conveyance, in the management and control of which all have equal authority and rights, and if it appears, in an action by one member of the enterprise against a third party, that the negligence of the defendant was concurrent with that of another member of the enterprise, the law imputes the latter's fault to the plaintiff and thus, on the ground of contributory negligence, denies him recovery; but the rule does not apply to an action by one member of the enterprise against another.

Although the law of negligence is not ordinarily concerned with the state of mind of the party sought to be charged with liability, it does, nevertheless, presuppose that he is capable of exercising sense perceptions and judgment, and since a person under the influence of sleep possesses none of these capacities, the problem of his legal responsibility for his conduct is not to be resolved by determining whether or not he exercised reasonable care during the period of unconsciousness but, rather, by ascertaining whether or not, under all the circumstances,

Bushnell *v.* Bushnell.

including the fact that sleep ordinarily gives some warning of its approach, he exercised such care in permitting himself to lose consciousness in the first instance.

One who operates an automobile while asleep must be held to be primá facie negligent, unless he offers evidence tending to excuse or justify his conduct, in which event it becomes a question of fact.

Since there was no obligation upon the part of the plaintiff to watch against impending danger or sleepiness on the part of her husband, who was an experienced operator and who had never before fallen asleep while driving, her own conduct in going to sleep while riding as a passenger in his automobile did not, as a matter of law, constitute contributory negligence.

In an action for personal injuries, the mental suffering caused by the danger to which the plaintiff's life was subjected is a proper element of damage.

Evidence of substantial payments for hospital, nursing and medical expenses does not, of itself, tend to establish the seriousness of the plaintiff's injuries or the length of his confinement, and is admissible for that purpose only when offered in corroboration of other testimony.

A receipted bill, if otherwise unobjectionable, may be admitted in evidence to corroborate other testimony as to its payment.

Items contained in a doctor's bill, which set forth a brief description of the injuries in question, are hearsay, and the bill should not be admitted in evidence for any purpose until the objectionable statements have been erased.

In an action by a wife against her husband for personal injuries, she is not entitled to recover for medical treatment unless it appears that the physician intends to look to her alone for payment and to waive his common law and statutory rights against the husband; and, therefore, in the present case, it was error for the trial court to exclude certain questions which were designed to elicit from the plaintiff's physician the information that he intended to hold the defendant directly and primarily responsible for the satisfaction of his bill.

An award of damages for medical treatment cannot be founded upon the vague and indefinite testimony of the physician that his charge might be "an ordinary fee of from two hundred to three hundred dollars."

The defendant husband, having been called as a witness for the plaintiff, his wife, stated upon cross-examination that on the day of the accident he had left his home at seven o'clock. Later, the defendant's counsel was permitted by the trial court, over objection by the plaintiff, to produce another witness who testified that the defendant had stated to him out of court that the

hour of departure was half past four. *Held* that the ruling of the trial court was proper.

Argued October 7th—decided December 23d, 1925.

ACTION to recover damages for personal injuries, alleged to have been caused by the negligent operation of the defendant's automobile, brought to the Superior Court in Hartford County and tried to the jury before *Dickenson, J.;* verdict and judgment for the plaintiff for $2,000, and appeal by the defendant. *Error, judgment set aside and new trial ordered nisi.*

*Raymond E. Baldwin,* for the appellant (defendant).

*Ralph O. Wells,* for the appellee (plaintiff).

MALTBIE, J. The plaintiff and defendant are husband and wife. She has brought her action to recover for personal injuries which she alleges she suffered by reason of his negligence and has secured a verdict. They were riding together in an automobile which he was driving, returning to their home in Thompsonville after taking their son to Brown College, where he was a student. The defendant momentarily fell asleep, with the result that the automobile ran off the highway and struck a tree at the side of the road, with consequent injury to the plaintiff. The plaintiff, who was riding on the front seat beside the defendant, was also asleep at the time of the accident, and had been for some time before. The defendant in his appeal makes four claims of substantive law which he says invalidate the verdict: first, that a wife cannot maintain an action against her husband to recover damages growing out of his negligence; second, that the parties were engaged in a joint enterprise at the time of the injury; third, that the defendant cannot be held to have been negligent because the accident was due to

the fact that he momentarily dropped off to sleep while operating the automobile; and fourth, that the plaintiff was guilty of contributory negligence.

In *Brown* v. *Brown,* 88 Conn. 42, 47, 89 Atl. 889, in sustaining the right of a wife to sue her husband for an assault committed upon her, we pointed out the nature of the change created in the status of husband and wife by the statute of 1877, in these words: "In marriages which have occurred since the Act took effect the parties retain their legal identity, and their civil rights are to be determined in accordance with the status thus established. These rights, except so far as they are modified by the statute itself or by other statutes, or are necessarily affected by the reciprocal rights and obligations which are inherent in the relation of husband and wife, are the same as they were before marriage. . . . It is an equally necessary consequence of her retention of her legal identity after coverture, that she has a right of action against her husband for a tort committed by him against her and resulting in her injury. Such a tort gives rise to a claim for damages. Such claim is property not in her possession, but which she may by action reduce into her possession, just as she might before coverture have had an action against him for such a tort committed before that event. The husband's delict, whether a breach of contract or personal injury, gives her a cause of action. Both necessarily follow from the fact that a married woman now retains her legal identity and all her property, both that which she possessed at the time of marriage and that acquired afterward." While we were there dealing with an assault, that is, a wilful tort, the language used was designed to apply broadly and to give the wife the same right to sue her husband for any tort committed by him that any other individual would have, except as that right is modified by statutory

Bushnell *v.* Bushnell.

provision or is necessarily affected by the marriage relationship.  The general language of the opinion must be read in the light of the exception, for doubtless there are certain mutual liabilities, and mutual rights as well, which inhere in the marriage contract, so that conduct which might be a tortious act as to third persons would under certain circumstances create no liability upon that ground as between husband and wife.  But here the wife is seeking to recover damages for the negligence of her husband, who, for aught that appears, had the normal use of his faculties of mind and body, and who was engaged in the ordinary occupation of driving an automobile upon the highway. Such a situation falls, not within the exception, but within the broad principle of liability announced in the *Brown* case.  That principle has not been questioned since, and the dangers from it which we then refused to regard as substantial have not in fact made themselves manifest.  We see no reason now to narrow the scope of the rule we then stated, and in compliance with it we hold that, aside from such cases as may be found to fall within the exception, a wife may maintain an action against her husband for personal injuries due to his negligence.

The so-called doctrine of joint enterprise, recognized by us to a certain extent in *Coleman* v. *Bent,* 100 Conn. 527, 124 Atl. 224, is very well stated in a note in 8 L.R.A.(N.S.) 628: "It is generally agreed that, if two persons are engaged jointly in a common enterprise requiring for its purpose that they use and occupy a conveyance of some sort,—a wagon, boat, or other vehicle,—in the management and control of which both have equal authority and rights, each assumes a responsibility for his colleague's conduct; and, if either is injured by the negligence of a third party and the concurring negligence of his companion, the mere fact

that he was not at the time driving the common conveyance will not enable him to recover of the wrongdoer." More specifically it is stated in Shearman & Redfield on Negligence, Vol. 1 (6th Ed.) § 65a: "The doctrine of imputed negligence is that in certain relations there shall be visited upon the plaintiff the negligence of another concurring with that of the defendant so as to defeat the action. It is peculiar to contributory negligence and can be invoked only where the negligence of another, for which the plaintiff is responsible, besides that of the defendant, proximately contributes to the injury." He who in the process of a joint enterprise is engaged in operating a vehicle represents in so doing all who are associated with him in that enterprise, and if he is negligent, any one of them may look to him for damages upon the same basis as that upon which a principal holds an agent liable for his negligent conduct. However it might have been were the plaintiff suing a third party for injuries due to his negligence in concurrence with that of her husband, here, where she was charging him directly with responsibility for injuries due to his own failure in duty, there was no place for any imputation of his want of care to her, and the sole issues were those having to do with his negligence and her own contributory negligence. The doctrine of joint enterprise was wholly inapplicable to such a situation.

The trial court submitted to the jury the question whether, in view of the circumstances preceding and surrounding the accident, the fact that the defendant momentarily fell asleep constituted negligence on his part. There is surprisingly little authoritative discussion in decisions or text-works as to the relation of sleep to the doctrines of negligence, although in a number of cases it seems to have been assumed that it constitutes contributory negligence for one in a

position of peril to become incapacitated by sleep from protecting himself from harm. *Grogitzki* v. *Detroit Ambulance Co.*, 186 Mich. 374, 152 N. W. 923; *Louisville & N. R. Co.* v. *Hunt's Admr.*, 142 Ky. 778, 135 S. W. 288; *Alabama Great Southern Ry. Co.* v. *Daniell*, 108 Miss 358, 66 So. 730; *Stewart* v. *Southern Ry. Co.*, 128 N. C. 517, 39 S. E. 51; *Sledge* v. *Weldon Lumber, Co.*, 140 N. C. 459, 53 S. E. 295; *Louisville & N. R. Co.* v. *Holland*, 164 Ala. 73, 51 So. 365; *Raden* v. *Georgia R. Co.*, 78 Ga. 47. In *Galveston, H. & S. A. Ry. Co.* v. *Brown*, 95 Tex. 2, 63 S. W. 305, and *Teel* v. *Ohio River R. Co.*, 49 W. Va. 85, 38 S. E. 518, the decisions were placed upon the ground that the plaintiff had failed to take reasonable precautions, the need for which arose during a period of sleep, and that such a failure constituted contributory negligence; the court in the first case saying that whether or not the plaintiff slept was unimportant in view of the clear breach of duty. The courts applied in those cases the principle that where one has come under a duty to use care not to cause injury and has failed to use it, the law pays no heed to his volition or mental condition; as Street puts it: "If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another just as if he had bound himself by an obligatory promise to exercise the required degree of care." 1 Street, Foundations of Legal Liability, p. 92. See also Holmes, The Common Law, p. 110; Pollock, Torts (10th Ed.) p. 458; 1 Beven, Negligence (3d Ed.) p. 5; *Heaven* v. *Pender*, L. R. 11 Q. B. Div. 503, 507; 41 Canada Law Journal, 233. That principle, however, does not quite reach to the situation before us. While the condition of mind of the person doing harm is not to be regarded in determining liability within the proper field of the doctrines of negligence, yet those doctrines of necessity

presuppose that the person whom it is sought to charge is capable of sense perceptions and judgment. 1 Street, Foundations of Legal Liability, p. 72; Salmond, Torts (6th Ed.) p. 21. Upon this basis, by the great weight of authority, the insane person, who is wholly irresponsible, is not chargeable with liability upon the ground of negligence. 1 Beven, Negligence (3d Ed.) p. 45; Bigelow, Torts (8th Ed.) p. 109; Wharton, Negligence (2d Ed.) § 87; 2 Jaggard, Torts, p. 871; Clerk & Lindsell, Torts (7th Ed.) p. 13; Holmes, The Common Law, p. 109; *Karow* v. *Continental Ins. Co.*, 57 Wis. 56, 63, 15 N. W. 27. The case of *Williams* v. *Hays,* 143 N. Y. 442, 38 N. E. 449, often cited to the contrary, loses weight in the light of the later decision in the same case, 157 N. Y. 541, 52 N. E. 589; and the text of Shearman & Redfield on Negligence, Vol. 1 (6th Ed.) § 121, is weakened by the note appended. We have ourselves given partial recognition to this principle in holding that the care required of a child is to be measured in the light of that which is to be expected of one of his immature years. *Rappa* v. *Connecticut Co.,* 96 Conn. 285, 114 Atl. 81. Certainly in all reason he who stricken by paralysis or seized by an epileptic fit, still continues with his hands upon the wheel of the automobile he was driving, and, unconscious, so directs it as to cause its collision with another, cannot be held negligent for the way in which he controlled it; and no more can he who exercises a like direction after he has been overtaken by sleep.

In such a case, the question must be, was the defendant negligent in permitting himself to fall asleep. *Helton* v. *Alabama Midland R. Co.,* 97 Ala. 275, 284, 12 So. 276. The defendant argues that, granted that premise, then he cannot be charged with negligence because no man can tell when sleep will fall upon him. It is probably true that one cannot ordinarily fix with

certainty upon the precise moment when he lapses into unconsciousness, but it is not true that ordinarily sleep comes unheralded.  Purves Stewart, in his "Diagnosis of Nervous Diseases," 3d Ed., page 423, thus describes the chief phenomena of ordinary, healthy sleep: "Firstly, there is diminution and then loss of conscious recognition of ordinary stimuli, such as would ordinarily attract our attention, whether these stimuli be derived from the outer world or from within the sleeper's own organism.  There is also, as consciousness is becoming blunted, a characteristic and indescribable sense of well-being.  Voluntary movements become languid and ultimately cease, and the muscles of the limbs relax.  Meanwhile there develops double ptosis or drooping of the eyelids; the pupils contract; the respiratory movements become slower and deeper, the pulse is slowed, the cutaneous vessels dilate to a slight extent and the general temperature of the body falls, whilst many processes of metabolism, such as those of digestion and of certain secretions, are retarded."  Particularly would this be true where the onset of sleep is due to the prolonged action of a uniform excitant, associated with little voluntary movement and a large degree of muscular relaxation, acting upon one who has become more or less fatigued and is sitting down in a warm atmosphere.  66 American Journal of Physiology, pp. 83, 84.  Sleep in such a situation does not ordinarily come upon one unawares, and by watching for indications of its approach, or heeding circumstances which are likely to bring it about, one may either ward it off or cease an activity capable of danger to himself or to others.  There are few ordinary agencies so fraught with danger to life and property as an automobile proceeding upon the highway freed of the direction of a conscious mind, and because this is so, reasonable care to avoid such a danger requires very

great care. *Mulligan* v. *New Britain,* 69 Conn. 96, 102, 36 Atl. 1005; *Brown* v. *New Haven Taxicab Co.,* 93 Conn. 251, 254, 105 Atl. 706; *Walters v. Hansen,* 99 Conn. 680, 683, 122 Atl. 564; *Tower* v. *Camp,* 103 Conn. 41, 47, 130 Atl. 86. ' In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent; it lies within his own control to keep awake or cease from driving; and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven. *Carlson* v. *Connecticut Co.,* 95 Conn. 724, 727, 112 Atl. 646; *Sliwowski* v. *New York, N. H. & H. R. Co.,* 94 Conn. 303, 309, 108 Atl. 805; 1 Shearman & Redfield, Negligence, § 58a *et seq.;* posthumous paper of Ezra Ripley Thayer, 29 Harvard Law Review, 807. If such circumstances are claimed to have been proven, it then becomes a question of fact whether or not the driver was negligent; and in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach. 5 Wigmore, Evidence (2d Ed.) § 2491. The trial court was right in leaving the issue to the jury as one of fact, but it might properly have gone farther and called attention to the last-mentioned feature of the case.

It is agreed that the plaintiff was asleep at the time of the accident and had been for some time before. The defendant claims that the evidence establishes these further facts: The defendant was in his sixty-first year. He and the plaintiff, with their son, left Thompsonville to drive to Providence at four-thirty in the morning, and the son had driven the automobile

until that destination was reached. The plaintiff and defendant soon set out on their return, the latter driving. They had planned to stop at Danielson for lunch, but finding no acceptable place to procure it, drove on. The day was a warm, drowsy, spring day; the sun at times shone into the automobile, particularly on the driver's side; the car was a closed car and all the windows were shut except that next the driver's seat; the road was smooth and dry, and the traffic light; the engine of the car had a particularly musical hum; and the plaintiff felt drowsy and sleepy. In fact she fell asleep before noon, and continued asleep until the accident, which took place about twelve-thirty. The defendant was an experienced driver, had never before fallen asleep while driving, had seldom felt sleepy, and on this occasion had no warning of sleepiness and felt no drowsiness. Accepting these as the proven facts, they do not show that as matter of law the plaintiff was guilty of contributory negligence, for they fall far short of establishing any obligation upon her part to exercise an oversight as to the way in which the automobile was being operated, to keep a lookout for impending danger, or to watch against sleepiness on the part of her husband. *Clarke* v. *Connecticut Co.,* 83 Conn. 219, 221, 76 Atl. 573; *Weidlich* v. *New York, N. H. & H. R. Co.,* 93 Conn. 438, 441, 106 Atl. 323; *Sampson* v. *Wilson,* 89 Conn. 707, 708, 96 Atl. 163; *Duffy* v. *Bishop Co.,* 99 Conn. 573, 578, 122 Atl. 121. These being the only ways in which she might have been instrumental in preventing the accident, she cannot, as matter of law, be charged with any breach of duty which materially contributed to bring it about. The issue was rightly submitted to the jury by the trial judge as one of fact, under adequate and proper instructions.

One claim of error is made as to the charge, which

requires mention. In charging upon the measure of damages, the trial court said: "Mental suffering,—this is also as proper an element of damage as physical suffering when it is a natural and proximate consequence of the physical injury. It is proper for you to consider in this connection, too, the danger that her life was subjected to, because the. putting of life in jeopardy would naturally cause mental suffering." This was a correct instruction. *Seger* v. *Barkhamsted,* 22 Conn. 290, 298; *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 377, 42 Atl. 67; *St. Martin* v. *New York, N. H. & H. R. Co.,* 89 Conn. 405, 408, 94 Atl. 279.

During the examination of the defendant, called by the plaintiff as her own witness, a hospital bill and a doctor's bill were introduced in evidence over the objection of defendant's counsel, the witness testifying that he had paid them himself; so, over a like objection, he testified as to a certain sum paid by him for a nurse for her, and she, while a witness in her own behalf, testified as to the employment of a maid, whose wages the defendant had also paid. The plaintiff claimed that the amounts of these several expenditures constituted proper elements of damages, but the court overruled this claim, and later explicitly charged the jury to disregard them as representing sums to be included in the verdict. These bills were apparently paid by the defendant, not as liabilities of the plaintiff which he discharged in her behalf, but as charges for which he was himself directly and primarily obligated to respond, and in this respect the ruling of the trial court was correct. *Novy* v. *Breakwater Co.,* 89 Conn. 14, 22, 92 Atl. 668. The court did, however, admit evidence of the payments as tending to show the extent of plaintiff's injuries and the length of time she was in the hospital. Payments such as these might have some value as corroborating testimony as to the

seriousness of plaintiff's injuries, the length of her confinement in the hospital, and her incapacity to perform services in the home, for substantial payments of this nature are not ordinarily made unless services were actually rendered and reasonably necessary. The bills, which were receipted, might in turn, if otherwise unobjectionable, be placed in evidence to corroborate the defendant's testimony as to those payments. *Banks* v. *Warner,* 85 Conn. 613, 617, 84 Atl. 325. Of themselves, however, such payments throw little, if any, light upon the character or nature of the injuries suffered, and should not have been admitted in evidence under the circumstances detailed in the finding.

To the admission of the doctor's bill, the defendant's counsel made a further objection that it was hearsay, referring to certain items which appeared in it in addition to the mere charges made, and which briefly described the plaintiff's injuries. Plainly these statements were hearsay, and the bill ought not to have been admitted until they had been in some way erased from it. These rulings might not, upon the record before us, have been deemed so harmful to the defendant as to require a reversal. The trial court, however, made one further ruling of which that cannot be said. The doctor in attendance upon the plaintiff, on cross-examination by the defendant, was asked the following questions with reference to services he had performed as family physician for the plaintiff and the defendant: "Whom did you render the bills to?" and again, "When you rendered a bill, you render it to Mr. Bushnell as head of the family, would you?" Both of these questions were excluded. They were proper. As already pointed out, if the doctor's bill was one which constituted a direct and primary obligation of the defendant, the plaintiff would not be entitled to have it included as an element in the damages awarded her,

and the questions excluded were well calculated to de-
velop such a situation. Moreover, though the plaintiff
had directly incurred an obligation to the physician to
pay for these services, the latter still had an option to
look to the plaintiff and defendant jointly for payment,
with a primary responsibility upon the defendant to
pay, under the statute, or to the defendant alone, under
the common law; *Buckingham* v. *Hurd,* 52 Conn. 404,
406; *Fitzmaurice* v. *Buck,* 77 Conn. 390, 391, 59 Atl.
415; *Ematrudo* v. *Gordon,* 100 Conn. 163, 167, 123 Atl.
14; and until it appeared that he proposed to look to
the plaintiff alone for payment, the amount of his bill
would not be recoverable by her as an element of her
damages. The physician had testified as to the amount
of the bill, "Why, I suppose perhaps an ordinary fee
of from two hundred to three hundred dollars might
cover the work that I have done on that case." Such
evidence was entirely too loose an estimate to justify
any award to the plaintiff on account of these services.
Nevertheless, the trial court instructed the jury that a
reasonable charge by the physician for his services
might be included in the damages if they found a
verdict for the plaintiff. As the jury could not in
reason be supposed to have awarded the plaintiff more
than the larger sum he named, it will work no injustice
to the defendant if the plantiff be given the option to
remit that amount from the judgment rather than to
have a new trial of the action.

The plaintiff has filed a bill of exceptions, which has
been covered in the foregoing discussion except as to
one point. That point arises in this way. The plain-
tiff called the defendant as her own witness, and on
cross-examination by his own counsel he stated that
he left Thompsonville that morning at about seven
o'clock. Later, defendant's counsel, over plaintiff's
objection, was permitted to elicit from a witness called

by him a statement made by the defendant out of court to the effect that he had left at half past four. This is all that appears from the finding, and, confining ourselves to that situation, there was no error committed in admitting the evidence. While this was not a usual situation, there is no reason in law why the credibility of any witness produced by an adversary may not be assailed, whether a party to the action or not. This would not, of course, aside from exceptional circumstances, permit a party to attack the general credibility of any witness whom he had himself used or expected to use, for that would be at the one time to offer him as entitled to credit and to assail that credit. *Wheeler* v. *Thomas,* 67 Conn. 577, 580, 35 Atl. 499; *Waterbury* v. *Waterbury Traction Co.,* 74 Conn. 152, 169, 50 Atl. 3; *Carpenter's Appeal,* 74 Conn. 431, 437, 51 Atl. 126; *Lesser* v. *Brown,* 75 Conn. 491, 494, 54 Atl. 205; *Carney* v. *Hennessey,* 77 Conn. 577, 586, 60 Atl. 120; *Todd* v. *Bradley,* 99 Conn. 307, 323, 122 Atl. 68.

There is error; the judgment is set aside and a new trial ordered unless the plaintiff within ten days files a *remittitur* of $300 of the amount of the verdict rendered; if such a *remittitur* is filed, the judgment shall thereupon stand affirmed as to the residue; the costs of this court to be taxed, in either event, in favor of the appellant.

In this opinion the other judges concurred.