HARRY YANCO, Jr., PLAINTIFF, v. FRANK THON, DEFENDANT.

HENRY WILLIAMS, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF FRED H. WILLIAMS, DECEASED, PLAINTIFF, v. FRANK THON, DEFENDANT.

Submitted May 15, 1931—Decided November 16, 1931.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the plaintiffs, *Samuel T. French* and *William I. Garrison.*

For the defendant, *Cole & Cole.*

The opinion of the court was delivered by

PARKER, J. The two cases arose out of the same accident and were tried together. Yanco and the deceased Williams were riding in Thon's car, all three being on their way home from a duck-hunting expedition. The defendant was driving at high speed, despite the protest of both his passengers, according to the testimony of Yanco, when the left wheels went off the concrete on the sand shoulder and the car capsized. Yanco was injured but not severely, and Williams died the same night of his injuries. There was a verdict in

favor of Yanco for $500, and in favor of the administrator for $6,000. The reasons assigned in each case in support of the rule are: (1) Verdict against the weight of evidence. (2) Verdict excessive. (3) Verdict result of passion, prejudice, &c., which is substantially the same as No. 1. (4) Refusal to direct a verdict for defendant. (5) Charge on the question of joint enterprise.

In support of reasons 1 and 3 and probably also of 4, these points are argued:

A. That plaintiffs were mere licensees, and in consequence the defendant owed them no duty of care, but only to abstain from willful injury. We have read the evidence carefully and are of opinion that the jury were fully justified in a finding that the deceased Williams and the living plaintiff were invited guests in defendant's car, and consequently that defendant owed each of them a duty of care.

B. That defendant was not guilty of negligence. On this point we think the evidence was plenary to the contrary.

C. That the two passengers were guilty of contributory negligence. This raises the question, which is of frequent occurrence in this class of cases, what a passenger in a closed car ought to do in self-protection when it appears that the car is being run negligently and at a dangerous speed. It is in evidence that Yanco asked defendant to take his time, and that he said, "who's driving this buggy?" and that Williams cautioned him in a similar vein a moment later. No one would reasonably claim that the passengers should have jumped out, and we think no sensible jury would say that one or both should have seized the wheel. The court very properly charged that contributory negligence is an affirmative defense, and that the jury should ask themselves whether the occupants of the car or either of them could by the exercise of reasonable care, have prevented the accident: if they could, they would be guity of contributory negligence and should not recover. The whole question was peculiarly for the jury, and we see nothing in their answer to it that calls for our interference.

We do not perceive that the point of refusing to direct a

verdict is specifically argued, but in any event, what has been said above should dispose of it for present purposes.

Next, that the verdicts are excessive. As to the award of $500 in favor of Yanco, we think it was quite reasonable. The verdict of $6,000 in the death case is to be tested by the rules specially applicable to that class of cases. Williams was a powerful man twenty-nine years old, a bachelor, but the main support of his father and mother, aged sixty-four and fifty-three years, respectively, at the time of the trial. He seems to have been contributing between $600 and $700 a year to the support of his parents, and the evidence indicated that it was unlikely that he would marry. It may be that if we were sitting as a jury we would reach a somewhat different result, but we see nothing about this award that cannot fairly be supported as an estimate of probabilities based on the figures appearing in the evidence.

The last point is that "the court erred in refusing to charge the doctrine of joint enterprise." The court was not asked to charge anything on that subject, but the real complaint is that the judge of his own motion instructed the jury as follows:

"I am also confronted in the pleadings by an affirmative defense on the part of the defendant which they have a right to set up, and that is that there can be no recovery on the ground that those people were engaged in a joint enterprise. In order that the defendant may have the benefit of an exception, I charge you that the theory and doctrine of joint enterprise is not applicable to this case, and, therefore, you will not consider that defense."

Counsel duly entered the exception suggested by the court, but as neither rule to show cause reserves any exceptions, the review of the point in this case ends here. Counsel recognizes the decision of the Court of Errors and Appeals in the recent case of *Harber* v. *Graham*, 105 *N. J. L.* 213, but hint that it was decided by a close vote, and seem uncertain, notwithstanding the lucid language of the late Judge White, who wrote the opinion, whether our court of last resort was declaring the law for New Jersey or Massachusetts.

The frequency with which the claim of joint adventure is made in cases of this kind seems to indicate a confusion of thought which may justify a short additional discussion of the subject. The notion appears to be that if one joint adventurer is injured by the negligence of his co-adventurer, that negligence is imputable to the injured adventurer and bars a recovery therefor by him. But this, as will be seen, is contrary to the elementary rules of principal and agent. The doctrine of joint enterprise or joint adventure appears to be a recent American origin (33 *C. J.* 841) and to relate to what, for want of better terminology, may be called temporary or *pro hac vice* partnership. Each joint adventurer is regarded as an agent for the others, who are bound by his acts in the prosecution of the enterprise, and liable for his wrongful acts therein. Hence, as to parties outside the enterprise, we have applicable the ordinary rules of principal and agent, and among them the doctrines of imputed negligence and imputed contributory negligence. In *Consolidated Traction Co.* v. *Hoimark,* 60 *N. J. L.* 456, the question of imputed contributory negligence arose from an ordinary partnership relation, but the case will suffice as an illustration. The New York case of *Stroher* v. *Elting,* 97 *N. Y.* 102, was one of imputed primary negligence. Defendant and one McCann were not partners; but defendant furnished a team and horses and McCann drove it and collected the fares, which were divided between them. McCann's negligence in running over plaintiff was imputed to defendant.

But, as pointed out in *Harber* v. *Graham, supra,* when one joint adventurer is injured by the negligence of his co-adventurer, the situation does not differ in principle from that existing when any other party is injured by negligence of his agent. It is elementary that in such a case there is a right of action by the principal against the agent. If A's servant negligently sets fire to his house, or wrecks his automobile; or if A's partner dissipates the partnership assets, A may enforce a liability. By the same token, if A and B in prosecution of a joint adventure are in a motor car which B drives so negligently as to injure A, A has a right of action

against B, his agent. That was the precise point decided in Harber v. Graham, and in the Connecticut case therein cited of *Bushnell* v. *Bushnell, 131 Atl. Rep.* 432 (a suit by a wife against her husband), where the court said (at *p.* 434): "He who in the process of a joint enterprise is engaged in operating a vehicle represents, in so doing, all who are asso--ciated with him in that enterprise, and, if he is negligent, any one of them may look to him for damages, upon the same basis as that upon which a principal holds an agent liable for his negligent conduct. However, it might have been were the plaintiff suing a third party for injuries due to his negligence in concurrence with that of her husband, here, where she was charging him directly with responsibility for injuries due to his own failure in duty, there was no place of any imputation of his want of care to her [*i. e.,* no place for imputation to her of his want of care] and the sole issues were those having to do with his negligence and her own contributory negligence. The doctrine of joint enterprise was wholly inapplicable to such a situation." In that case the wife was suing the husband, but this was a mere incident not affecting the reasoning.

The brief of counsel, after questioning the decision in Harber v. Graham, proceeds: "We know of no case decided prior to the cited case which so held. There are, on the other hand, a wealth of cases wherein the court considered and passed upon the defense of common and joint enterprise, under facts and circumstances similar to those present in the case at bar." Such a broad assertion would seem, at least, to call for the citation of a few of this "wealth of cases," but it may be well to say that not a single decision of any kind is cited in support of this sweeping statement. The Massachusetts and Connecticut cases cited in Harber v. Graham are to the contrary: and the general rules applicable are laid down in 33 *C. J.* 852, § 37, *tit. "Joint Adventures,"* and 2 *C. J.* 720, § 381, *tit. "Agency."*

In the case at bar, therefore, the trial court rightly charged that the theory and doctrine of joint enterprise were not applicable to bar recovery by the plaintiffs.

We conclude that the verdict was not against the weight of evidence on any phase of the case, that there was no legal error, and that the damages were not excessive. The rule to show cause will accordingly be discharged.