JOHN DAMUTZ
vs.
NEW ENGLAND HOUSEHOLD COMPANY, ET ALS.

Superior Court  New Haven County  File #44760

Present: Hon. JOHN A. CORNELL, Judge.

R. T. Mokrzynski,   Attorney for the Plaintiff.

Campner, Pouzzner & Hadden, Attorneys for the Defendant.

MEMORANDUM FILED NOVEMBER 25, 1935.

CORNELL, J. The case was submitted to the jury, in effect as an action by plaintiff against defendants, James Geddes as Sheriff of the County of New Haven and his deputy, Adelbert C. Mautte.

The particular conduct upon the part of the defendant, Mautte which is alleged to have inflicted the asserted injuries upon the plaintiff's cows is set forth with particularity in the amended complaint.

This is concerned exclusively with the manner in which defendant Mautte, drove, handled and treated the cows from the time he took possession of them at plaintiff's farm until he delivered them into the care of the party who kept them while the attachment remained in effect.

It is during this restricted period that the damage is alleged to have been done. The amended complaint expressly negatives the occurrence of an injury attributable to defendants, to the cows thereafter by declaring in paragraph 10: ". . . . when the cows reached the place hereinbefore mentioned, as approximately seven miles distant from the plaintiff's home, said cows were lame, sore and their powers to give milk were destroyed."

The damage to the cows for which plaintiff is entitled to recover is, of course, such as proximately resulted from the acts alleged to have been the responsible producing agency of it—and, of course, none other than that.

The jury might justifiably have found that the defendant, Mautte violated the duty which the law imposed upon him in caring for the cows while taking them from plaintiff's place to that of their destination, and quite certainly did so.

Having done so, it was their duty to assess damages but the damages which they might properly assess were such only as there was evidence to show were the proximate result of the wrongful conduct alleged and found established by them.

The burden of proving what damages resulted from such

lack of care, was plaintiff's. **Barry vs. Miller, 104 Conn. 362; Miller vs. Conn. Co. 112 Conn. 476, 478; Bushnell vs. Bushnell, 103 Conn. 583, 594; Madore vs. New Departure Mfg. Co. 104 Conn. 709, 713; Gannon vs. Kresge Co., 114 Conn. 36; Morse vs. Consolidated Railway Co. 81 Conn. 395.**

In discharging this burden he was required to submit evidence which would remove the conclusion to be reached from the sphere of mere conjecture into the realm of reasonable probability, or as it is said: ". . . . a probability so strong as to induce a belief in an impartial mind." **Barry vs. Miller, supra p. 355** and cases there cited.

What consequences might be found to directly flow from the injuries to the cows alleged in the amended complaint— or more pertinent to the instant cause, whether the particular consequence claimed by plaintiff resulted from such injuries— is a question the answer to which does not lie in the common knowledge of the average man.

One might readily conclude that if the cows were mistreated as plaintiff contends, some injurious consequences might reasonably be expected to ensue. But what these might probably be and their extent and duration——and particularly, whether their natural effects would be practical destruction of the cow's milk producing capacities is a subject to be passed upon only by persons having special knowledge concerning it or by persons of ordinary experience aided by the opinion of persons having special knowledge of the subject. **(Bates Ex. vs. Carroll, 99 Conn. 677)** in the absence of facts fairly warranting a conclusion.

Plaintiff, apparently recognizing this did submit the testimony of a doctor of veterinary. The opinion of the latter was contrary to the contentions of the plaintiff in vital particulars in that it stated that while the claimed mistreatment of the cows would be likely to produce digestive disturbances, the effect of such upsets would disappear within three or four days thereafter and normal milk production would return and that if the subnormal milk production remained at the point contended by plaintiff for the period which he maintained it did, than some other cause was more probably responsible for it.

It is quite true, as plaintiff's counsel contends that notwithstanding the fact that he is hardly in a position to impeach

the credibility of his own witness (State vs. Guilfoyle, 109 Conn. 124, 133) the jury was not bound to accept the latter's opinion and might wholly disregard it, as they apparently did.

If the plaintiff's experts' opinion be placed out of the case, then nothing is left in the form of evidence from which the jury could find what they had to find to sustain the verdict returned by them. The result must necessarily be that they reached their determination without evidence and, hence, by the route of speculation. See Witkowski vs. Goldberg, 115 Conn. 693, 696, 697.

Plaintiff's contention that the situation presented by disregarding the opinion of their own expert witness is comparable to that presented in Gannon vs. Kresge Co. 114 Conn. 36, 38, and that the reasoning underlying the opinion in that case and in the case of Barry vs. Miller, 104 Conn. 362, 365, applies, cannot be granted.

These cases harmonize with the rationale expressed in the opinion of Madore vs. New Departure Mfg. Conn. 104 Conn. 362, which, as adapted to the situation assumed here, supra, may be said to be that where expert opinion is found by the trier, for any of the reasons stated (Madore vs. New Departure Mfg. Co. supra p. 714) to be not controlling, lack of causal connection cannot be found "unless the facts outside this medical testimony fairly warrant that conclusion."

That expression is another mode of saying that notwithstanding expert testimony of conclusive character, or lack of same or of any at all, evidence may be presented which may not only justify, but require a finding of causal connection between the claimed result and the attributed cause.

The application of this principle, however, demands that the distinction be observed between that which is merely a guess resulting from lack of or inadequate foundation in fact, and a reasoned conclusion erected as the logical result of evidence which points or may reasonably be found to point in but one direction.

In Barry vs. Miller, supra, at p. 364, this consideration was pointed out in the following language:

"No cause for the onset of this acute form of paresis with which the claimant suffered following his fall, was suggested by the two medical experts for the defendants

and none appears in the evidence, unless the fall occasioned the onset."

And, again, in **Gannon vs. Kresge Co. supra at p. 38,** where it was said:

"There may be sets of circumstances, especially when no other cause than that claimed is suggested, sufficient to remove determination of the issue from the realm of conjecture without the aid of positive expert opinion and create a probability so strong as to induce and warrant a reasonable belief in an impartial mind."

The evidence in the instant cause, presented, at least, two alternative hypotheses for the alleged almost complete failure of the cows' milk producing ability, viz., (1) that contended for by plaintiff as induced by defendant's Mautte, mistreatment of them and the other (2) malnutrition as the result of plaintiff's own failure to properly feed and care for them.

The first of these was repudiated by plaintiff's own expert; the second of them suggested by him in cross examination.

If the jury disregarded this expert's testimony entirely, they were then left to determine whether the first caused the condition complained of rather than the second, without the aid of any evidence to assist them in accepting the one theory and eliminating the other—a situation governed by the opinion in **Bates vs. Carroll, supra.**

The elements of damage alleged in the complaint are two viz., (1) loss of milk production and (2) decreased market value.

Since the jury could not have found that either of these were the reasonably probable result of defendant's Mautte alleged conduct, but has by their verdict determined that, he, nevertheless, committed the acts alleged or some of them, the plaintiff is entitled to nominal damages. **Orentlichterman vs. Matarese, 99 Conn. 122, 128; Beattie vs. N. H. R. R. Co., 84 Conn. 555; Dewire vs. Hanley, 79 Conn. 454.**

The point where the outside limits of nominal damages enters the domain of substantial or compensatory damages is a hazy one. For the purpose of this case, it would seem that $35.00 may not be excessive as nominal damages.

Unless the plaintiff shall within ten days next following

the filing of this memorandum in the office of the clerk, file a remittitur accepting a verdict of $35.00, the verdict shall at the expiration of said period of 10 days be set aside.