LEONARD SMITH ET AL. *v.* JOHN CZESCEL
(5397)

BORDEN, DALY and O'CONNELL, Js.

Argued September 30—decision released November 10, 1987

*Arthur M. Field,* for the appellants (plaintiffs).

*William F. Gallagher,* with whom, on the brief, was *Gwen B. Weltman,* for the appellee (defendant).

BORDEN, J. The principal issue of this appeal is whether the trial court committed plain error in its charge to the jury regarding falling asleep while operating a motor vehicle. We conclude that the charge as given does fall within the plain error doctrine.

The named plaintiff, Leonard Smith, and his minor daughter, Kristen Smith (the plaintiff), appeal from the judgment rendered upon a verdict for the defendant, who was the owner and operator of a motor vehicle in which the plaintiff was a passenger. The plaintiffs' principal claims of error concern the court's instructions to the jury arising out of evidence that the defendant momentarily fell asleep while driving his vehicle.

The plaintiffs' evidence was, in part, as follows: On December 31, 1981, at approximately 7:30 p.m., the plaintiff went to a New Year's Eve party in Naugatuck with the defendant, who was her boyfriend. Some time after midnight, they left to go home in the defendant's Chevrolet Blazer. The plaintiff climbed into the back of the vehicle and fell asleep. The defendant had nearly reached his home when he remembered that the plaintiff was asleep in the back of his vehicle. He then drove toward the plaintiff's home. After driving for a total of about forty minutes, they were traveling southbound on Coram Road, in Shelton, approximately one mile from the plaintiff's house. At 3 a.m., while traveling approximately thirty-five miles per hour, the vehicle left the road, and struck a mailbox and a telephone pole. The plaintiff incurred serious and undisputed injuries.

The plaintiff recalled only climbing into the back of the vehicle, falling asleep, and waking up in the hospital emergency room. She testified that, while the defendant was visiting her in the hospital three days after the accident, the defendant told her that he "started to doze off," that he felt the vehicle go off the

road, and that he attempted to steer it back onto the road before hitting the pole. The defendant testified that "[f]rom the time I was headed southbound on Coram Road, almost at the scene of the accident, I have a blank spot from there and the next thing I knew, I was headed off the road." He stated in his motor vehicle accident report, introduced into evidence, that he "was traveling south on Coram Road. Everything fine. Must have dozed for [a] second. Next thing I knew a mailbox and telephone pole [were] in front of me." He also testified that this written account was true "[t]o the best of my knowledge, I cannot—the dozed off part is the only thing—I got that black spot, that blank," that he "must have dozed off for a second," and "I got that blank spot, that's all I can really say." It is clear, therefore, that the court was required to charge the jury on the rules of law applicable to a situation in which the operator of a motor vehicle falls asleep.

The court charged in this respect as follows: "Now, in this case the defendant has testified that prior to the accident he had lost consciousness, blacked out I think was the word that was used. I instruct you that under the laws of this state, it is not negligence merely to fall asleep, faint or suddenly lose consciousness and thereby lose control of a car. For you to find that the defendant was negligent by reason of falling asleep, fainting or losing consciousness, you must first find that he had some advance notice that he was going to fall asleep, faint or lapse into unconsciousness. If you do not find that he had such advance notice, you may not find that his falling asleep, fainting or losing consciousness was negligence. Likewise, if you so find that his falling asleep or losing consciousness was without any advance notice, you may not find him negligent by reason of failing to keep a reasonable and proper lookout for other vehicles or failing to keep his vehicle under reasonable and proper control or by reason of driving in

the wrong direction on the highway or by operating his vehicle in such a manner to endanger life, limb and property. Certainly in all reason, he who being stricken for the first time by paralysis still continues with his hands upon the wheel of an automobile he was driving and unconscious so directs it to cause its collision with another cannot be held negligent for the way in which he controlled it. Similarly where a driver has been overtaken by sleep, the question must be was the defendant negligent in permitting himself to fall asleep? Negligence is not to be imputed to the driver of an automobile merely because he suddenly blacks out, faints or suffers sudden attack and losing consciousness or control of the car when he is without premonition or warning of his condition. However, the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case and sufficient for recovery by the plaintiff if no circumstances tending to excuse or justify his conduct are proven."[1]

---

[1] In charging on a claim of the plaintiffs regarding statutory negligence, the court further charged as follows: "Now, before I go any further, I must caution you again as to the charges that I have given you up to this point. As I have indicated to you, in order for you to be able to get into the question of a statutory breach or statutory violation or anything else I am going to tell you now, you must first find, of course, that there was negligence by virtue of the falling asleep. As I have indicated to you, you can find either it was negligence or it wasn't, but that depends on whether or not you accept the latter portion of my charge as far as where I stated that the mere fact of the going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case and sufficient for recovery if no circumstances tending to excuse or justify his conduct are proven. So, if you feel that the falling asleep, that there were no circumstances tending to excuse or justify that conduct and you draw the inference of negligence, then you may go ahead and apply the rest of these rules that I am going to give you relative to the law. If you find, however, that it wasn't his fault that the accident occurred, that he blacked out or fell asleep, then you need not consider any other elements of damages, or any other elements of negligence as far as this case is concerned."

In the course of certain other instructions, the court repeated portions of its charge regarding falling asleep: "I charged you as follows: If you

Thereafter, during its deliberations, the jury requested the court to repeat its charge "about negligence and blacking out by the defendant." The court repeated for the jury its original charge on falling asleep or losing consciousness. The jury returned a general verdict for the defendant. The court denied the plaintiffs' motion to set aside the verdict, and rendered judgment for the defendant. This appeal followed.

The plaintiffs raise a constellation of claims of error regarding the court's instructions. The defendant correctly argues, however, that the plaintiffs failed to preserve properly their claims for appellate review because they neither filed a request to charge regarding sleep, nor took exceptions which were distinct enough to alert the court to their claims of error.[2] Indeed, the plain-

find that [the defendant's] falling asleep or losing consciousness was without any advance notice, then you may not find him negligent by reason of failing to keep a reasonable and proper lookout for other vehicles or failing to keep his vehicle under reasonable and proper control.

"Now, there is no allegation of his failure to keep his vehicle under reasonable and proper control. So, that should be omitted, or by reason of driving in the wrong direction on the highway.

"I said to you also by operating his vehicle in such a manner as to endanger life, limb and property. The way this should read is, 'Likewise, if you should find that his falling asleep or losing consciousness was without advance notice, then you may not find him negligent by reason of failing to keep a reasonable and proper lookout for other vehicles or by reason of driving in the wrong direction on the highway'; that is the proper charge to you."

[2] The only exception to the charge on sleep taken by the plaintiffs was as follows: "[Plaintiffs' Counsel]: Your Honor for the record, I would like to object to one portion of the charge relating to the question of whether dozing off is negligent without advance warning and that characterization without a more specific—

"The Court: Counsel, your exception is well noted. Anything else, Counsel?

"[Plaintiffs' Counsel]: No."

Although arguably the court's interruption may have truncated what might have become a more distinct exception, that did not relieve the plaintiffs of their obligation to make their claims clearly known to the court so that it could intelligently decide whether to correct any claimed inadequacy in the charge. *Bevins* v. *Brewer*, 146 Conn. 10, 12–13, 147 A.2d 189 (1958).

tiffs took no exception at all to the court's repetition, after the jury's request, of its original instruction. Such procedural failures ordinarily preclude appellate review. Practice Book § 315.[3] Despite these gross procedural inadequacies, however, we conclude that the plaintiffs' claims qualify for review under the plain error doctrine. This court "may in the interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 4185. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980). An important factor in determining whether to invoke the plain error doctrine is whether the claimed error "result[ed] in an unreliable verdict or a miscarriage of justice." *State* v. *Hinckley,* supra, 88. This is such a case.

Our Supreme Court first considered the issue of the relationship between sleep and negligence in operating a motor vehicle in *Bushnell* v. *Bushnell,* 103 Conn. 583, 588–92, 131 A. 432 (1925). In that case, the plaintiff passenger sued the defendant driver who had momentarily fallen asleep, causing the car to leave the road and hit a tree. The trial court "submitted to the jury the question [of] whether, in view of the circumstances preceding and surrounding the accident, the fact that the defendant momentarily fell asleep con-

---

[3] The plaintiffs claim in their brief that they preserved their claim of error clearly to the court on their motion to set aside the verdict. They have failed, however, to provide us with a transcript of that proceeding, and their motion to set aside the verdict, which is in the record, does not establish that they did so. We cannot, therefore, be confident that they made even that belated attempt to present their claims clearly to the trial court.

stituted negligence on his part." Id., 588. The defendant argued that, as a matter of law, he could not be negligent "because no man can tell when sleep will fall upon him." Id., 590.

The court, in rejecting the defendant's argument, pointed out that, although one cannot precisely fix the moment when he falls asleep, "it is not true that ordinarily sleep comes unheralded." Id., 590–91. The court then reviewed "the chief phenomena of ordinary, healthy sleep"; id., 591; namely, diminishing consciousness of ordinary stimuli, either external or internal to the sleeper; a sense of well-being; relaxation of the muscles and limbs; drooping eyelids; contracted pupils; slow and deeper breathing; slower pulse; general lowering of body temperature; and slowing of metabolic processes. Id. This is particularly true where sleep comes to one in a situation such as driving a car, where there is "prolonged action" of the motion of the car, little voluntary movement, and muscular relaxation, "acting upon one who has become more or less fatigued and is sitting down in a warm atmosphere." Id.

The court then stated: "Sleep in such a situation does not ordinarily come upon one unawares, and by watching for indications of its approach, or heeding circumstances which are likely to bring it about, one may either ward it off or cease an activity capable of danger to himself or to others. There are few ordinary agencies so fraught with danger to life and property as an automobile proceeding upon the highway freed of the direction of a conscious mind, and because this is so, reasonable care to avoid such a danger requires very great care. *Mulligan* v. *New Britain,* 69 Conn. 96, 102, 36 Atl. 1005 [1897]; *Brown* v. *New Haven Taxicab Co.,* 93 Conn. 251, 254, 105 Atl. 706 [1919]; *Walters* v. *Hansen,* 99 Conn. 680, 683, 122 Atl. 564 [1923]; *Towers* v. *Camp,* 103 Conn. 41, 47, 130 Atl. 86 [1925]. In any ordinary case, one cannot go to sleep while driv-

ing an automobile without having relaxed the vigilance which the law requires, without having been negligent; it lies within his own control to keep awake or cease from driving; and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven. *Carlson* v. *Connecticut Co.,* 95 Conn. 724, 727, 112 Atl. 646 [1921]; *Sliwowski* v. *New York, N.H. & H. R. Co.,* 94 Conn. 303, 309, 108 Atl. 805 [1920]; 1 Shearman & Redfield, Negligence § 58a et seq.; posthumous paper of Ezra Ripley Thayer, 29 Harvard Law Review, 807. If such circumstances are claimed to have been proven, it then becomes a question of fact whether or not the driver was negligent; and in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach." *Bushnell* v. *Bushnell,* supra, 591–92; see also *Potz* v. *Williams,* 113 Conn. 278, 281, 155 A. 211 (1931) (falling asleep while operating motor vehicle may constitute recklessness).

The *Bushnell* court concluded that the trial court properly left the issue of the defendant's negligence to the jury, but it added that "[the trial court] might properly have gone farther and called attention to" the fact that ordinarily sleep does not come without warning. *Bushnell* v. *Bushnell,* supra, 592. There are several critical features of the law as set out in *Bushnell* which the charge of the trial court in this case should have but did not relate to the jury.

First, sleep does not ordinarily come upon a driver of a car without some prior indications of its onset. "[B]y watching for indications of its approach" or remaining aware that the driver of a car late at night

is in a situation "likely to bring it about," the driver should either stay awake or should cease driving while sleepy. Id., 591.

Second, few activities are as dangerous as an automobile on a highway which is not under the control of a "conscious mind." Id. Therefore, "reasonable care to avoid such a danger requires *very great care*." (Emphasis added.) Id., 591–92.

Third, ordinarily one cannot fall asleep while driving a car without having been negligent by virtue of failing to maintain "the vigilance which the law requires." Id., 592. Because a driver ordinarily has control of whether he stays awake or ceases driving, the fact of having fallen asleep at the wheel is a sufficient basis on which to find him negligent, "if no circumstances tending to excuse or justify his conduct are proven"; id.; and "[i]f such circumstances are claimed to have been proven," the driver's negligence becomes a question of fact under which "all the relevant circumstances are to be considered, *including the fact that ordinarily sleep does not come upon one without warning of its approach.*" (Emphasis added.) Id.

Thus, the jury should also have been instructed, in accordance with these principles, that if a driver of a car falls asleep while driving, that alone will be a sufficient basis for a finding of negligence, because ordinarily the law requires that a driver maintain a vigilance either to stay awake or to cease driving. The jury should have been instructed that, if there are circumstances which excuse or justify his having fallen asleep, they may find that the driver was not negligent, but in this connection they should have been further instructed that "ordinarily sleep does not come upon one without warning of its approach." Id.[4]

---

[4] It is difficult to conceive, as a matter of common human experience, that, absent an illness such as narcolepsy; see Stedman's Medical Diction-

Another flaw in the court's instructions to the jury in this case was its equation between, on one hand, falling asleep and, on the other hand, fainting or suddenly losing consciousness. It is true that, in *Bushnell* v. *Bushnell,* supra, 590, the court appeared to draw the same equation, comparing a driver who is "stricken by paralysis or seized by an epileptic fit," and "cannot be held negligent for the way in which [after having been stricken] he controlled" the car, to a driver "who exercises a like direction after he has been overtaken by sleep." We believe, however, that equation to be inapplicable to this case.

The quoted language from *Bushnell* is dictum; there was in that case no claim that the driver suddenly lost consciousness. The sole claim was that he "momentarily fell asleep." Id., 585. More importantly, common sense dictates that the law draw a distinction between a driver who falls asleep at the wheel and a driver who suddenly faints or loses consciousness from a cause other than sleep, such as a stroke, seizure or other sudden attack. Sleep is a phenomenon which all persons experience. It has certain normal harbingers of which the reasonably prudent driver should be aware. Sudden fainting or loss of consciousness, however, is not such a common phenomenon, and may or may not be something of which the driver should have been aware, depending on his history and the circumstances of the case. See *Shea* v. *Tousignant,* 172 Conn. 54, 58, 372 A.2d 151 (1976).[5]

ary (24th Ed.) (defining narcolepsy as a "sudden uncontrollable disposition to sleep occurring at irregular intervals, with or without obvious predisposing or existing cause"); one could suddenly fall asleep without first experiencing the usual feelings and symptoms of drowsiness. We recognize, however, that this may be possible, and that a driver who claims to have done so is entitled to have the jury pass upon his claim. See, e.g., *Shea* v. *Tousignant,* 172 Conn. 54, 372 A.2d 151 (1976).

[5] Indeed, in this case there was no evidence that the defendant fainted or suddenly lost consciousness. The clear thrust of his motor vehicle acci-

We recognize that in *Shea* v. *Tousignant,* supra, 56–57, our Supreme Court quoted a request to charge submitted by the defendant driver, which in some respects is similar to the court's charge in this case. The trial court in *Shea* refused to charge the jury as requested by the defendant, although the defendant had "testified that she did not know how the accident happened, stating that she either passed out or fell asleep before the accident, and that before she lost consciousness she did not in any way feel sleepy, nor did she feel herself dozing, nor feel her eyes closing." Id., 56. The Supreme Court held that "[b]y the trial court's refusal to charge the jury on the effect of unforeseeably falling asleep or losing consciousness, the jury were left uninstructed on this issue." Id., 58. In *Shea,* moreover, the Supreme Court did quote with approval the dictum from *Bushnell* v. *Bushnell,* supra, 590, equating a driver who is " 'stricken by paralysis or seized by an epileptic fit . . . [with] he who exercises a like direction after he has been overtaken by sleep.' " *Shea* v. *Tousignant,* supra, 57. The court also stated that a driver is not negligent " 'merely because he suddenly blacks out, faints, or suffers a sudden attack, losing consciousness or control of the car, *when he is without premonition or warning of his condition.'* " (Emphasis added.) Id., 58, quoting 8 Am. Jur. 2d 245 n.17, Automobiles and Highway Traffic § 693.

dent report, his oral statement to the plaintiff, and his testimony in court, was that he fell asleep. The only references in his testimony to another cause of the accident were to the effect that, at a point on the road immediately before the accident scene he had a "black spot" or a "blank spot," and that he next recalled heading off the road. It is difficult to read this as testimony that he suddenly and momentarily fainted or lost consciousness. It appears more likely to be testimony that he had a "blank spot" in his memory as to the course of his car immediately prior to its leaving the road. This reading is consistent, moreover, with the defendant's repeated testimony that he momentarily fell asleep and awakened when he felt his car leave the road.

There is a critical distinction between *Shea* and this case, however. In Shea, the defendant testified that she "either *passed out* or fell asleep" at the wheel, and that before losing consciousness she experienced none of the usual harbingers of sleep. (Emphasis added.) *Shea* v. *Tousignant,* supra, 56. In *Shea,* therefore, unlike this case, there was evidence that the defendant either suddenly lost consciousness from a cause other than sleep, or suddenly fell asleep without having experienced the usual pre-sleep warnings. There was, therefore, evidence of "circumstances tending to excuse or justify [the defendant's] conduct"; *Bushnell* v. *Bushnell,* supra, 592; and the defendant was entitled to have the jury pass on her factual claim that her loss of consciousness was without warning; see footnote 4, supra; under appropriate instructions as to "the effect of *unforeseeably* falling asleep or losing consciousness." (Emphasis added.) *Shea* v. *Tousignant,* supra, 58.

In this case, however, there was no evidence that the defendant fell asleep without having experienced any of the usual forewarnings, and there was no evidence that he suddenly fainted or lost consciousness from a cause other than sleep. See footnote 5, supra. There was no basis in the evidence, therefore, for the court to instruct the jury that one who falls asleep while driving is to be treated the same as one who suddenly faints or loses consciousness from some other cause.

The plaintiffs' claims regarding the trial court's instructions to the jury are dispositive of this appeal, and require a new trial. We decline to consider the plaintiffs' other claims because some of them are not likely to arise upon a retrial, and the remainder were not properly presented to the trial court or preserved for appeal, and do not come within the plain error doctrine.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.