WILLIAM J. MOFFITT *vs.* THE CONNECTICUT COMPANY.

First Judicial District, Hartford, January Term, 1913.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Upon an issue of fact as to whether the defendant's street-car did or did not stop at a certain point, evidence of a rule of the company as to where its cars must stop is admissible in support of the testimony of the operators of the car that it stopped not at the point claimed by the plaintiff, but at the point prescribed by the rule.

Such evidence has a probative value in law, resting upon the logical inference which men might draw therefrom in the ordinary affairs of life.

Evidence of the rule was also admissible for the purpose of establishing a systematic course of conduct upon the part of the company ripening into a fixed habit or a definite custom as to stopping its cars at the particular point designated in the rules, and not elsewhere.

A negative custom may be equally effective in supporting a fact as an affirmative one.

This principle applies to acts negligently done or omitted, but not to those wilfully done.

The case of *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, in so far as it opposes this conclusion, overruled.

In the present case evidence was received tending to establish such habit or custom in the operation of the defendant's cars, and the plaintiff offered in rebuttal evidence of a single act of variance therewith, occurring a year after the alleged accident. *Held* that the exclusion of such evidence lay within the discretion of the trial court.

In its charge the trial court confined its instructions to the situation of one who had boarded the car after it had stopped in response to a signal. *Held* that this was the case as presented by the plaintiff and therefore the court had no occasion to instruct the jury as to what would have been the respective rights and duties of the parties had the plaintiff boarded the car while proceeding slowly or after it had stopped for some other cause than to take on a passenger.

One may board a stationary car in the street for whatever cause it may have stopped, but if injured by the sudden starting of the car he cannot recover unless the employees on the car had notice, or reasonable means of notice, of his entry and thereafter were guilty of negligence.

Such a person may rely upon the reasonableness of the conduct of the

Moffitt *v.* Connecticut Co.

operators of the car, but their conduct must be judged by what they knew or ought to have known.

It is the duty of a street-railway company to use the highest degree of diligence in affording the person attempting to board its car a reasonable opportunity so to do, whether he is boarding the car at a regular stopping point, or at a point other than the regular stopping point when the car has stopped in response to his signal.

Error will not be predicated upon a part of the charge which, when taken in its proper relation to the whole charge, correctly states the law and cannot, by any reasonable construction, have been misunderstood by the jury.

Argued January 8th—decided March 11th, 1913.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in Hartford County and tried to the jury before *Williams, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

*Patrick F. McDonough,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant).

WHEELER, J.  The plaintiff claimed he signalled the motorman of defendant's north bound trolley-car to stop the car, that the motorman was then looking in his direction, and thereupon the car stopped about opposite the north corner of Main and East Main streets in New Britain, and as he was attempting to board the car it was started suddenly without giving him a reasonable opportunity to board it, causing him to be thrown upon the rear platform and to be injured.

The defendant claimed the plaintiff never signalled said car, that it never stopped at the north corner, and that the accident never happened.

Upon cross-examination of plaintiff's witnesses the defendant attempted to show that the point where the plaintiff's witnesses testified the car stopped, viz., on

said north corner, was not the regular stopping place for cars, but that the regular stopping place was on the south corner of said streets, at which point there were two white poles indicating the stopping point.

The plaintiff objected to this evidence, and assigns its admission as a principal ground of error.

As here pressed, the objection is that proof of the place of stopping at other times is not admissible as tending to disprove the plaintiff's witnesses that the car did in fact stop at the north corner at the time in question; that negligence of a motorman existing at one time cannot be disproved by proof of careful conduct at other times.

It is true that one's negligence on a particular occasion cannot be proved by showing his negligence on other occasions, nor can his freedom from negligence on one occasion be shown by proof of his due care on other occasions. Our reports furnish numerous illustrations of the application of this principle. *Morris* v. *East Haven*, 41 Conn. 252, 254; *State* v. *Goetz*, 83 Conn. 437, 440, 76 Atl. 1000; *Budd* v. *Meriden Electric R. Co.*, 69 Conn. 272, 286, 37 Atl. 683; *Tiesler* v. *Norwich*, 73 Conn. 199, 203, 47 Atl. 161; *Gilmore* v. *American Tube & Stamping Co.*, 79 Conn. 498, 504, 66 Atl. 4. These are instances where an act of negligence, or the reverse, was sought to be inferred from other acts of negligence or non-negligence.

The case at bar differs from these cases, and does not fall within the principle invoked.

This is an attempt to corroborate the testimony of the operators of the car that it did not stop, at the time and place the plaintiff claimed it did, by showing that this place, under the rules of the defendant, was not its regular stopping place, but that that was on the opposite side of the street.

The specific question is, whether the rules of the de-

fendant as to where its cars must stop are admissible in support of the testimony of the operators of the car that the car did not stop at the point claimed, but at the point named by the rules.

In the ordinary affairs of life, in a conflict over a matter of fact between two persons, men would regard the fact that one of the persons was in duty bound to act under a certain rule, which was equally obligatory upon a number of men and important in the prosecution of a quasi-public business, as some evidence in support of his contention that he in fact acted under the rule. It would be thought to make more probable his claim. An evidential fact which men generally would act upon in the affairs of their life will logically aid in determining a legal issue and ought to be held legally relevant and of probative value. And this is the test of legal admissibility. *Locke* v. *Kraut*, 85 Conn. 486, 489, 83 Atl. 626.

If this offer be held in reality to be an attempt to prove the practice of the defendant in stopping its cars in accordance with its rule, it would still be admissible. We should then have a systematic and invariable regularity of conduct upon the part of a large body of operatives, and such a course of conduct would tend to prove the custom of the defendant to stop its cars at the particular point designated by the rules. A systematic course of conduct on the part of a body of men operating a railway, acting for a common purpose resulting in a custom in not stopping at a given point may likewise be shown, since a negative custom may be equally effective in supporting a fact as an affirmative one. 1 Wigmore on Evidence, §§ 92, 376, 379. This principle applies to acts negligently done or omitted, not to those wilfully done. *State* v. *Manchester & L. Railroad*, 52 N. H. 528, 549.

The authorities are not uniform, but we think the

strong tendency is toward the conclusion we have reached, admitting evidence of a like character, tending to establish a systematic course of conduct ripening into a fixed habit or a definite custom.

The liberalization of courts in more recent times in the application of the rules of evidence has been due in no small measure to the more uniform enforcement of that first of all rules of evidence, that "any fact may be proved which logically tends to aid the trier in the determination of the issue," and to the better appreciation of the practical justice of making the logical proof of the court-room conform to the logical proof of the every-day world.

A reference to a few of the more modern cases will indicate the tendency. In *Maisels* v. *Dry Dock, E. B. & B. St. R. Co.*, 16 N. Y. App. Div. 391, 393, 394, 45 N. Y. Supp. 4, the defendant's theory was that the car stopped at the easterly corner, and the court held that evidence that cars always stopped at this corner was admissible. "The regular practice and custom, which the evidence in question tended to establish, to stop at the easterly corner, was entirely competent to show the greater probability of the defendant's theory and the testimony in support of it." In *Alexandria & F. R. Co.* v. *Herndon*, 87 Va. 193, 12 S. E. 289, the plaintiff's theory was that she got off the train at a regular stopping place, while the defendant's theory was that she attempted to get off before reaching this point. The court say (p. 199): "It is, therefore, clear that testimony to the effect that the company's trains theretofore had habitually stopped at a particular place, did tend to prove the issue, and was admissible. In other words, such testimony certainly tended to create some ground of presumption that, on the night of the accident, the train was stopped at the point where the plaintiff fell and was injured, and that it was standing at the time,

and was not in motion, though, of course, any mere presumption, thus founded, would necessarily have to yield to positive evidence to the contrary." In *Hall* v. *Brown*, 58 N. H. 93, the question was whether the railroad crossing was obstructed at a certain time; and in holding that the manner in which their cars were usually managed at the same place might be competent evidence, the court said (p. 96): "Any matter of fact, the effect, tendency, or design of which is to produce in the mind a persuasion, affirmative or disaffirmative, of the existence of some other matter of fact, is relevant as 'an evidentiary fact' tending to establish the 'principal fact.' . . . When there is a question whether a particular act was done, the existence of any course of office or business, according to which it naturally would have been done, is a relevant fact." *Jackson* v. *Grand Ave. Ry. Co.*, 118 Mo. 199, 24 S. W. 192; *McGee* v. *Missouri Pacific Ry.*, 92 Mo. 208, 220, 4 S. W. 739.

Cases in our own reports which seem to conflict with the rule here announced may, we believe, be distinguished except in one instance (*Laufer* v. *Bridgeport Traction Co.*); they were not instances of fixed habit or custom.

The testimony of Mr. Victory, excluded in *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, 486, 37 Atl. 379, should, under our present application of this rule, have been admitted.

For the purpose of rebutting the testimony of the defendant that cars did not stop at the point claimed by him, the plaintiff offered to prove that a car of the defendant had stopped at this point a year after the accident. This was remote, and unconnected with an offer to prove other instances of stopping at times nearer to the time of the accident, or of an offer to prove a practice. The exclusion of the offer was within the discretion of the court.

The photographs were properly admitted, their verification being established within our rule. *McGar* v. *Bristol*, 71 Conn. 652, 655, 42 Atl. 1000.

As the evidence went to the jury the defendant claimed that for a long time the regular stopping place of the car under its long-established rule was at the south corner of Main and East Main streets, at which point were two white poles indicating a regular stopping place, and that the next white pole and regular stopping place for cars going north was located one hundred and fifty feet north of the south corner of Main and East Main streets, where the plaintiff claimed the accident occurred. Complaint is made of the court's charge to the jury, that "upon the evidence in this case, it does not appear that the plaintiff . . . had a legal right to board this car at any place he pleased in the city of New Britain." It is said that this instruction intended the jury to understand that a person had not the legal right to board a car in a public street except at the regular stopping points. If this were what the charge intended, it could not be justified. A reading of the entire charge plainly shows that the court did not so intend, and that the jury could not reasonably have so concluded.

One proposing to take passage on a street-car may board the car at such places as the railway may have designated as stopping points,—and the reasonable designation of such places is within the control of the railway,—and at such other points as the railway may stop its cars upon the public streets. We omit from consideration a stop upon a private way or within the railway's right of way. But the railway company could only be liable for an injury to a person, boarding its car at a place other than its regular stopping point, by the sudden starting of the car, when it knew, by signal or otherwise, of the attempt to board; or when it ought

to have so known from the circumstances of the case, as, for example, from the practice of persons boarding the car when it stopped at that point. The court properly instructed the jury that it was the defendant's duty to use the highest degree of diligence in affording the person attempting to board its car a reasonable opportunity so to do, whether the person were boarding the car at a regular stopping point or at a point other than the regular stopping point where the car had stopped in response to the signal of this person. The court thus presented the case of a car stopping at a point other than its regular stopping point for the purpose of taking on a passenger. This was a case of actual knowledge by the operator of the car of the proposed passenger's intent to board.

The defendant's claim that the plaintiff, if he boarded the car at the point claimed, must have boarded the car when moving slowly, was not an issue before the jury, and did not require an instruction from the court. The court merely stated the claim of fact without suggesting the legal conclusion resulting therefrom, and no harm could have resulted to either party from its statement. The railway could not be liable to a person attempting to board its slowly moving car unless those in the management of the car had knowledge of such attempt and thereafter, through the negligent operation of the car, caused injury to the person to which his own negligence did not materially contribute.

The plaintiff's complaint is, not that the charge incorrectly presented the duty of the defendant toward the plaintiff in stopping the car in response to plaintiff's signal, but rather in the limitation of the charge to a stoppage of the car by the motorman in response to a signal. The claim now is that while the plaintiff signalled and the car stopped, the plaintiff's right to board the

car was not dependent upon a finding that the motorman stopped in response to a signal; that the car having stopped in the street he had a right to board it, and the court should adequately have instructed the jury upon this situation. We agree that the plaintiff might board the car wherever it should stop upon the street, whether on signal or otherwise, and if injured through the sudden starting of the car he could recover provided the employees of the car had notice, or the reasonable means of notice, of the attempt to board, and thereafter negligently started the car, and his injury resulted therefrom without negligence on his part.

We think, too, the plaintiff is right in his claim that when a car comes to a stop in a public street, whether on signal or not, the person attempting to board the car as a passenger has the right to rely upon the reasonableness of the conduct of the operatives of the car. But their reasonableness of conduct must be judged of by what they knew or ought to have known. `

If judicial knowledge might be taken, or proof had been offered, that persons are in the habit of boarding cars which come to a stop at any point on our travelled streets, the court might properly, upon request or of its own motion, have instructed the jury upon this issue.

But the record discloses that no specific claim such as is now made, was made on the trial, and that no instruction regarding this issue was asked for. 'The plaintiff confined his single request to charge, tc a situation "when a street railway company stops its car in the street to receive passengers." The plaintiff's theory of the case was that the car stopped in response to his signal. This was the issue tried and none other. And the trial court, reading the charge as a whole, fairly presented the issue tried to the jury, and they found adversely to the plaintiff, and, as we think, in accord-

ance with the defendant's claim that no signal was given and no stop made.

There is no error.

In this opinion the other judges concurred, except HALL, C. J., who concurred in the result, but died before the opinion was written.