M.    WALTER SLIWOWSKI, ADMINISTRATOR, *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1919.

WHEELER, BEACH, GAGER, CASE AND MALTBIE, Js.

The plaintiff's intestate, employed as a fuel handler by the defendant railroad company at its coal-pocket in Bridgeport, while coaling one of its locomotives during the night, was struck by a rod which, instead of being secured, as it should have been, by a catch on the under side of the coal chute to which it was attached, improperly hung down from the outer end of the chute over the tender of a locomotive which, having been coaled, was backing down the track alongside the coal-pocket and upon which the decedent was riding; and from the injury so received he shortly died.    There was no eye-witness of the accident and the only direct evidence as to how it occurred consisted of the declarations of the decedent, who spoke English very imperfectly.    The trial court, applying the doctrine of *res ipsa loquitur,* found the facts as above stated, and rendered judgment for the plaintiff, from which the defendant appealed. *Held:*—

1.   That the defendant having gone to trial upon the merits, without raising any question as to the generality of the averment that the death of the plaintiff's intestate was caused by the negligence of the defendant "in failing to provide him with a safe place in which to work," could not now object to it as an insufficient basis for the findings of the trial court; and furthermore, that the contention of the defendant that it was in fact misled by the pleadings and evidence of the plaintiff, found little if any support in the record.

2.   That this court could not say that the conclusion of the trial court

as to the cause of the injury was unwarranted, without invading its province to determine the facts.

3.  That the doctrine of *res ipsa loquitur* did not preclude the trier from inferring the ultimate fact of negligence from the subordinate evidential facts, though the latter were also, to some extent, established through a process of inference or deduction.

Decisions respecting the building of one inference upon another do not prescribe a rigid rule of legal prohibition, but are intended to caution and guide the trial court in the exercise of its judgment in determining whether the evidence offered in a given situation is or is not too remote to be of any value.

Argued November 6th, 1919—decided January 29th, 1920.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the plaintiff for $4,521, and appeal by the defendant. *No error.*

Under the Employers' Liability Act of Congress, the sum awarded was apportioned between the decedent's widow ($3,226) and his minor son ($1,295).

The defendant maintains in its railroad yard at Bridgeport a coal-pocket, at which locomotives, coming in from use on the road, are supplied with coal before being placed in the engine-house. This coal-pocket is supplied with fourteen chutes designed to discharge the coal from the pocket into the engine tenders. Each of these chutes is fastened to the frame of the coal-pocket by a hinge, in such a manner that its outer end can be raised and lowered; when not in use the chute can be swung up until it is out of the way of passing engines; when in use, it is lowered until the outer end is in position above the tender to be filled. At the outer end, swinging from a ring, is a rod about four feet four inches long, which, when the chute is in use, is placed in a socket on the frame of the coal-pocket in such a

way as to brace the chute, and which, when not in use, should be held in place by a catch on the under side of the chute.   These chutes are under the general supervision of the bridge department of the defendant, and are inspected about once a month by its building supervisor.   They are operated, however, by employees of the company called fuel handlers, whose duty it is to see to the coaling of the engines when placed in front of the particular chute then in use.   In order to make their work easier, although the rules of the defendant forbade the practice, the fuel handlers were accustomed to hang to the outer end of the chutes pieces of old iron which were called by the defendant's employees "hangers"; these would weigh in the neighborhood of fifteen pounds, and would hang down about a foot or eighteen inches from the end of the chute.   If the chute after use was properly pushed up by the fuel handler, there would be no danger to any one upon a passing engine from these hangers; and if the rods used to brace it were properly secured and held by the catches designed for them, there would be no danger from them.   But if a chute were not pushed up a sufficient distance, the hangers would be in a position where any one riding upon the engine tender might strike against them; and the same is true of the rods, if the catches should fail to hold them.

Plaintiff's decedent was employed by the defendant as one of the fuel handlers working at this coal-pocket. On the night of July 3d, 1917, or early the next morning, he suffered an injury while in the performance of his duties, causing a rupture of the kidney from which he subsequently died.   Apparently no one saw the accident, and the only evidence as to the manner of its occurrence consists of statements made by the decedent before his death.   On their face, these statements point very strongly to the hangers as the cause of the injury.

The trial court, however, concluded that the blow was received by the deceased coming in contact with one of the rods which was improperly hanging over the track, and, applying to the situation thus presented the doctrine *res ipsa loquitur*, found that the cause of the rod being in this improper position was the defective condition of the catch which ordinarily supported it.

*James W. Carpenter*, for the appellant (defendant).

*Henry E. Shannon* and *Paul S. Goldberg*, for the appellee (plaintiff).

MALTBIE, J.   The trial court has found that the injury to the decedent was caused by a blow received by his coming in contact with the rod attached to the end of one of the coal chutes, and that this rod had fallen from its place and swung over the track because it was not properly held in place by reason of the defective condition of the catch which ordinarily supported it.

The first claim pressed upon the attention of the court is that such a finding is not supported by the allegations of the complaint, and therefore cannot serve as the basis of a judgment.   The fifth paragraph of the complaint alleges, among other things, that the death of the plaintiff's intestate was caused by the negligence of the defendant "in failing to provide the plaintiff's intestate with a safe place in which to work."   The rod, when not in use, would, unless provision was otherwise made for it, hang over the track in a position dangerous to the employees of the company in the pursuit of their ordinary duties.   The provision of a catch to hold it out of the way was clearly an incident to the duty of the defendant to furnish its employees with a safe place in which to work; and, having provided an adequate catch, the obligation to maintain it in proper condition rested

upon the defendant as part and parcel of the same general duty. *Rincicotti* v. *O'Brien Contracting Co.*, 77 Conn. 617, 620, 60 Atl. 115. Negligence in the furnishing of an inadequate catch in the first instance, or in the failure to maintain in proper condition, by inspection and repair, a catch which when furnished was adequate, alike fall within the allegation quoted from the complaint. Having gone to trial upon the merits of the case without raising any question as to the generality of this allegation, the defendant cannot now object to it. *Eckert* v. *Levinson*, 91 Conn. 338, 340, 99 Atl. 699; *Gargan* v. *Harris*, 90 Conn. 188, 191, 96 Atl. 940.

We are not greatly impressed with the contention of the defendant, that it was in fact misled by the pleadings and the evidence offered by the plaintiff, and did not anticipate that the question of its liability might hinge upon its performance of its duty with reference to the support of this rod. In the cross-examination of one of the plaintiff's witnesses, it called out a description of the rod and of the method of its support when not in use, and the fact that, if not properly secured upon its catch, it would hang over the track; and in arguing its motion for a nonsuit at the close of plaintiff's evidence, it made distinct reference to a possible claim of the plaintiff that it had failed to provide the deceased with a safe place in which to work. If the defendant saw fit to leave unchallenged the broad allegation of the complaint, it was its duty to prepare its case to meet any possible claim that might be made under it.

The trial court has distinctly based its conclusion upon the application of the doctrine *res ipsa loquitur* to the facts found by it to have been proven by the testimony. The defendant contends that these facts are an insufficient basis for the doctrine, in that there is no finding of the "time, place and manner" of the oc-

currence of the injury.  Upon the evidence it would
doubtless be difficult to determine the precise time of
the accident, and the particular chute which was its
cause, and perhaps the court might hesitate to deter-
mine the engine upon which the deceased was then rid-
ing.  But it is difficult to see how a lack of particularity
in any of these respects could invalidate the court's
conclusion.  It is true that one of the elements necessary
to that conclusion was the fact that the particular chute
in question had not been used by the deceased on the
day in question; but that fact the court does find; and
it is the necessary result of its finding that the injury
did not occur at chute No. 7, where the engine upon
which the deceased was then employed had been coaled,
and, also, the fact, supported by fair inference and not
questioned by the defendant, that no other chute than
No. 7 had been used by the deceased on the night of
his injury.  The trial court has found these essential
facts: the engine upon which the deceased was work-
ing, having been coaled at one of the pockets, was being
backed past several of the others; while being so backed,
the deceased was pushed against and struck by the rod
which was attached to one of those other chutes, and
which, instead of being secured in its proper place, was
hanging over the track.

If one examines the testimony and the exhibits in
the light of common sense and his own practical expe-
rience, one finds in them reasonable support for every
element there included.  It is true that the testimony
given as to the statements of the deceased in telling
how his injury occurred, would, on its face, indicate
that the injury was due to one of the hangers rather
than to one of the rods; but these statements were, in
all but one instance, made to persons who were evi-
dently unfamiliar with the operation of the chutes and
who might well fail to distinguish between the rods

hanging from the chutes, and the irons called distinctively "hangers"; and, in the other instance, were made in English, a language which the deceased spoke very poorly. Against the prima facie effect of these statements the trial court might well have placed the probabilities arising out of the nature of the injury suffered, the relative positions of the rods and the hangers with reference to the chutes and the manner in which they were respectively fastened to it, as well as the evidence tending to prove that when the deceased came on duty that night there were no hangers on the chutes,. that other engines had been run back and forth past the chutes before the one on which the deceased was injured, and that only one chute had been used that night. To hold unwarranted the trial court's conclusion that the injury was due to a blow from one of the rods rather than from a hanger, would be to invade its right to determine the facts in the case.

But the defendant contends that the trial court in the main arrived at its conclusions of fact, not from direct testimony, but by inference, and that to apply to conclusions so arrived at the *res ipsa loquitur* doctrine is to build inference upon inference in a way which the law will not permit. It is true that the trial court's conclusions as to the manner of the accident were largely by way of inference; and it is also true that the doctrine *res ipsa loquitur* is nothing more than a label for the principle that, in certain cases, a court may, from the proven facts, infer the ultimate fact of negligence. *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 26, 96 Atl. 171; *Thorson* v. *Groton & Stonington Street Ry. Co.*, 85 Conn. 11, 15, 81 Atl. 1024; *Zeigler* v. *Danbury & Norwalk R. Co.*, 52 Conn. 543, 554; *Button* v. *Frink*, 51 Conn. 342, 347. But we cannot grant that the trial court committed error in taking these successive steps to its conclusion. In *State* v. *Kelly*, 77 Conn. 266, 271, 58 Atl. 705,

this court said: "Evidence for the purpose of creating an inference of a fact upon which to base an inference of another fact is generally inadmissible. It is too remote." And in *Levidow* v. *Starin*, 77 Conn. 600, 603, 60 Atl. 123, this court said that a court is not required to promote the construction of "a cob-house of inferences." The guarded language of these decisions points the way to the true rule. To hold that an inference may never be rested upon an inference, would be to do violence to many decisions of this court. Thus, motive is relevant in a criminal case only as affording a basis of an inference of guilt from its presence, or of innocence from its absence; yet "motive is a fact which may be inferred from circumstances." *State* v. *Buonomo*, 88 Conn. 177, 184, 90 Atl. 225; *State* v. *Saxon*, 87 Conn. 5, 86 Atl. 590. So, on the issue of the mental capacity of a testator, words and acts prior and subsequent to the execution of the will are admissible; that from them his mental capacity at the time of their occurrence may be inferred, and from his condition then, a further inference may be drawn as to his condition when the will was executed. *Cullum* v. *Colwell*, 85 Conn. 459, 465, 83 Atl. 695. And for other similar illustrations of inferences resting upon inferences, see *Spencer's Appeal*, 77 Conn. 638, 60 Atl. 289; *Moffitt* v. *Connecticut Co.*, 86 Conn. 527, 86 Atl. 16; *State* v. *Williams*, 90 Conn. 126, 130, 96 Atl. 370. There is, in fact, no rule of law that forbids the resting of one inference upon facts whose determination is the result of other inferences. 1 Wigmore, Evidence, §41; *State* v. *Fiore*, 85 N. J. L. 311, 320, 88 Atl. 1039, 1042. It is but a rule of caution; its true function is to guide the court in the exercise of its judgment in determining whether or not evidence offered is too remote; *Wynehouse* v. *Mandelson*, 84 Conn. 613, 617, 80 Atl. 706; or, in making its final decision, in deciding whether the plaintiff has established a reason-

able probability. *Hoyt* v. *Danbury,* 69 Conn. 341, 348, 37 Atl. 1051.

The reasons of appeal which have not been, in effect at least, already answered, do not merit discussion. No ground exists for correcting the finding; and the trial court was justified in holding that the conditions specified in *Stebel* v. *Connecticut Co.*, 90 Conn. 24, 96 Atl. 171, as requisite for the application of the doctrine *res ipsa loquitur*, had been fulfilled.

There is no error.

In this opinion the other judges concurred.