**STATE, Plaintiff-Appellee, v. MYERS, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 6100.   Decided July 14, 1959.

Earl W. Allison, Pros. Atty., John E. Compson, Albert G. Giles, Asst. Pros. Attys., Columbus, for plaintiff-appellee.

A. R. Zingarelli, Columbus, for defendant-appellant.

(WISEMAN, J, of the Second District, sitting by designation in the Tenth District.)

## OPINION

By WISEMAN, J.

This is an appeal on questions of law from the judgment of the Common Pleas Court of Franklin County in a criminal case in which the defendant-appellant was convicted of second degree manslaughter.

The defendant was charged with violating §4511.16 R. C., which provides:

"No person shall unlawfully and unintentionally kill another while violating any law of this state applying to the use or regulation of traffic. Any person violating this section is guilty of manslaughter in the second degree."

The indictment charged that on July 18, 1958, the defendant, Jack D. Myers, within the County of Franklin,

"did unlawfully and unintentionally kill Olive Fannin while violating laws of this state applying to the use and regulation of traffic, to wit,

"(a) Sec. 4511.19 R. C.—did operate a motor vehicle on Wilson Bridge Road in said county while under the influence of intoxicating liquor,

"(b) Sec. 4511.20 R. C.—did operate a motor vehicle upon Wilson Bridge Road without due regard for the occupants of this vehicle or of other vehicles, so as to endanger the life, limb, or property of persons in the lawful use of the highways,

"(c) Sec. 4511.43 R. C.—being the operator of a motor vehicle did fail to stop at a stop sign and yield the right-of-way before entering the intersection of Wilson Bridge Road and State Highway 315,

"contrary to the statute in such cases made and provided and against the peace and dignity of the State of Ohio."

After a verdict of guilty was returned and judgment entered, defendant's motion for new trial was overruled.

The defendant has assigned five claimed errors: First, admission of the State's expert witness relative to a blood specimen; second, denying defendant's request to give to the jury five special written instructions; third, failure to incorporate in the general charge the points of law embraced in the requested special written instructions; fourth, error in the general written charge; and, fifth, in refusing to amend its general written charge after it was given to the jury.

In the main, the pertinent facts are undisputed. On July 18, 1958, at about one o'clock A. M., the defendant was operating an automobile in a westerly direction on Wilson Bridge Road, accompanied by a passenger, Olive Fannin. Wilson Bridge Road and State Highway 315 form a T-intersection. As the defendant approached this intersection he was travelling at a rate of speed which he estimated at forty to forty-five miles per hour; there was no attempt to stop or turn the automobile at said intersection; the automobile was driven straight across State Highway 315 and into a bank of earth on the west side of the highway; no other vehicle was involved. The evidence further shows that the weather was clear and the road was dry. The defendant was familiar with the intersection. There is a stop sign warning drivers of vehicles travelling west on Wilson Bridge Road to stop before entering State Highway 315. Olive Fannin died as a result of injuries suffered in the accident.

The evidence further shows that the defendant had lost sleep the previous night, had worked the day previous, and in the evening met with friends and engaged in drinking beer from early evening until after midnight. The defendant and Olive Fannin left the last tavern visited at about 12:45 A. M. About ten minutes later the accident happened. In explanation of the happening the defendant testified: "I don't know whether I blacked out and went to sleep." (Page 181, Bill of Exceptions) "I either blacked out, went to sleep, or—I just don't know." (Page 182, Bill of Exceptions.) The defendant testified that he didn't remember going through the stop sign. (Page 207, Bill of Exceptions.) Soon after the accident the defendant stated to the officers that he didn't know what happened; that "he must have gone to sleep."

Under the first assignment of error, the defendant raises the question as to the competency of the testimony given by the State's expert witness pertaining to the specimen of blood taken from the defendant. First, the defendant claims that there was not a sufficient showing of identification of the specimen of blood as being that taken from him at the hospital a short time after the accident. After due consideration the trial court overruled defendant's motion and objection to the testimony of the expert witness respecting the analysis of the blood specimen. (Page 93, Bill of Exceptions.) The Highway Patrolman, Dunaway, testified that after his arrival at the University Hospital, at 1:57 A. M. on July 18, 1958, the defendant permitted the specimen of blood to be taken in the presence of the witness, which was taken by a doctor

in the emergency room from the anterior aspect of the left arm and elbow, using a needle and syringe; the specimen was then sealed in a bottle; the witness, in company with Radioman Woodring, took the specimen to the Columbus Police Department and placed it in the refrigerator in Mr. Shupe's laboratory. The specimen was further identified by Mr. Shupe, a chemist employed by the Columbus Police Department, who testified that on July 18, 1958, at 8 o'clock A. M., he removed the sealed specimen from his refrigerator, which was labelled "Jack Donald Myers, time 2:30 A. M., M. D. Dunaway"; that he thereupon made an analysis of the alcohol content of the blood specimen which showed the specimen to contain .17 of one per cent of alcohol by weight; that over .15 of one per cent everybody is under the influence of alcohol.

There was no break in the chain of evidence established by the testimony of Dunaway and Shupe; there are no facts which would indicate any confusion as to the identity of the specimen or any possibility of tampering. It was incumbent upon the State to show that the specimen was the defendant's and that there had been no substitution or tampering. The burden is not an absolute one, requiring the State to negative all possibility of tampering. See State v. Smith, 222 S. W., 455 (Mo.); People v. Riser, 305 Pacific (2d), 1, 10 (Calif.); 21 A. L. R. (2d), 1216 and supplements. The identification of the specimen being proved and there being no evidence whatever indicating tampering with the specimen, the testimony of the expert witness was admissible. Furthermore, there is other evidence in the record of sufficient probative value to justify a finding by the jury that the defendant was under the influence of intoxicating liquor, and for this reason admission of the specimen into evidence, if erroneous, did not constitute prejudicial error True, the defendant claims he was not intoxicated. The charge here is for driving while under the influence of intoxicating liquor. It was not necessary for the State to show, under the charge, that the defendant was in a drunken stupor. Under the evidence, the rule of law laid down in Williams v. Columbus, 31 Abs 395, applies with much force. The syllabus is as follows:

"The Court of Appeals is not inclined to reverse a conviction where the testimony as to driving while intoxicated is conflicting, and a conviction based on the testimony of the two arresting officers will be affirmed even though defendant and his wife testify that he was not intoxicated at the time of the arrest and four or five other witnesses testify that he was not intoxicated at earlier times during the night."

Counsel for the defendant discusses under one heading the second, third, fourth and fifth assignments of error and we do likewise. At the conclusion of the evidence defendant requested the court to give five special written instructions to the jury before argument, and also requested that a written charge be given. The court gave a written charge, but refused to give before argument the special written instructions, stating that the court would consider the request in connection with the written charge. After argument, but before the general charge was given, the defendant renewed his request, which was refused.

In a criminal proceeding the giving of special written instructions on points of law covered in §2945.10 (E) R. C., before argument, is discretionary and not mandatory. **15 O. Jur. (2d), 743, Section 577** (cases cited).

The defendant contends that the points of law embraced in the requested special instructions were not carried into the general charge and that prejudicial error resulted.

The court may refuse to give an incorrect or an inapplicable instruction; or may refuse to give a requested instruction if covered in substance in the general charge; neither is the court required to give a requested instruction in the exact language used in the request. If the general charge contains all the law of the case, error cannot be predicated on the refusal to give a requested instruction. **15 O. Jur. (2d), 744, 745, 746, Sections 578, 579.** See **Bond v. State, 23 Oh St 349.** Also, the court may refuse to give a requested instruction which, though correct under a different state of facts, requires essential modification to prevent it from misleading the jury. **Callahan v. State, 21 Oh St 306.**

Requested instructions No. 1 and No. 2 are as follows:

"1. You, the members of the jury, cannot infer that the defendant was reckless or violated a traffic law from the mere happening of a traffic accident which resulted in the death of the deceased, Olive Fannin.

"2. Before you can find the defendant guilty of manslaughter, you must find as a matter of fact, that the defendant not only violated one of the sections set forth in the indictment of the Ohio Revised Code but you must also find that the unlawful act relied upon was the proximate cause of the death of the deceased, Olive Fannin."

The above requested instructions were covered in substance in the general charge.

Requested instructions Nos. 3 and 4 are as follows:

"3. If you should find, as a matter of fact, that there was an odor of alcohol in the defendant's breath, that fact alone is not sufficient proof that he was intoxicated.

"4. If you find, as a matter of fact, that there was an odor of alcohol in the defendant's breath and that the defendant acted otherwise as an intoxicated person might act, but that the other actions could be accounted for by the collision in which the defendant was involved, then those facts alone are not sufficient proof beyond a reasonable doubt that the defendant was intoxicated."

The above requested instructions were incomplete, partly incorrect and misleading, and were properly refused. We question whether instruction No. 3 is based on a "point of law" as required by statute. **Sec. 2945.10 (E) R. C.**

The defendant places particular stress on the refusal of the trial court to give requested instruction No. 5, as follows:

"If you find, as a matter of fact, that the defendant fell asleep or 'blacked out' prior to the accident in which the deceased, Olive Fannin, was killed, then the defendant is not guilty of manslaughter unless he had such warning under all the circumstances that he would fall asleep

or 'black out' and that to continue to drive under the circumstances amounted to a disregard to the life, limb or property of other persons in the lawful use of the highways."

This instruction is intended to cover the gist of the defendant's defense. The legal effect of this instruction is that if the defendant fell asleep or blacked out while driving the automobile, as claimed by the defendant, he could not be found guilty of negligence unless he had warning that he would fall asleep or black out. The defendant has never contended that he was ill, which was the fact in the case of **Weldon Tool Co. v. Kelley, 81 Oh Ap 427, 76 N. E.** (2d), 629, or that he suddenly lost consciousness from any unforeseeable cause, which was the fact in the case of **Lehman v. Haynam, 164 Oh St 595, 133 N. E.** (2d), 97. The state claims that requested instruction No. 5 is an incomplete and an incorrect statement of the law in that it does not require the jury to find that the defendant suddenly became unconscious, which he had no reason to anticipate; also, it implies that if the sleep was induced by intoxication, it would still be excusable; that it confers a blanket excuse on the defendant for his act by failing to reserve for consideration of the jury the question of guilt of the defendant, if the alleged "falling asleep" was the proximate result of intoxication; finally, that it fails to place the burden on the defendant to prove by a preponderance of the evidence that the happening was excusable. We agree with the State on these propositions.

In **Lehman v. Haynam, 164 Oh St 595, 133 N. E.** (2d), 97, the third paragraph of the syllabus is as follows:

"Where in an action for injuries arising from a collision of automobiles the defense of the defendant driver is that he was suddenly stricken by a period of unconsciousness, which rendered it impossible for him to control the car he was driving and which he had no reason to anticipate or foresee, the burden of proof as to such defense rests upon such driver."

It will be observed that the Lehman case was a civil action for damages. We are of the opinion that in a criminal proceeding, the burden is upon the defendant to prove an affirmative defense. Bearing on the question of intoxication and falling asleep, the court on pages 599 and 600 said:

"The rule with reference to unconsciousness being a defense against a claim of negligence is well stated as follows in 28 A. L. R. (2d), 35.

" 'By the great weight of authority, an operator of a motor vehicle who, while driving, becomes suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause, and is unable to control the vehicle, is not chargeable with negligence or gross negligence. Stated differently, fainting or momentary loss of consciousness while driving is a complete defense to an action based on negligence (and a fortiori to an action based on gross negligence) if such loss of consciousness was not foreseeable.'

"Then follow supporting cases from 20 jurisdictions. The cases seem to be somewhat in conflict as to whether plaintiff in such an action

has the burden of showing that the driver causing an accident is conscious, or whether the burden is upon the driver claiming unforeseen unconsciousness to prove it.

"In our opinion the latter rule is the most salutary.

"It would be difficult, if not impossible, for a plaintiff to prove a defendant conscious, and particularly to prove that if he were unconscious whether such condition was foreseeable, such as sleepiness or an intoxicated condition, or resulted from an unforeseen cause.

"In our opinion, if one was guilty of what would be negligence as to a conscious person and claims not to have been negligent because of an unforeseen unconsciousness, he should have the burden of proving his condition by the preponderance of the evidence."

Also at page 601 the court said:

"The burden is upon defendant to prove his defense of unforeseen unconsciousness, and, although no one contradicted in haec verba defendant's testimony that he blacked out from a unforeseen cause, nevertheless, his claim was hotly disputed. There were bits of evidence from which the jury might have found that it had a basis for not believing defendant or that his unconsciousness was due to drowsiness.

"It would be an unrealistic situation if a driver claiming that he blacked out must be believed as a matter of law, because another driver could not positively say that the first driver did not black out."

In Bushnell v. Bushnell, 103 Conn., 583, 131 A., 432, the seventh paragraph of the syllabus is as follows:

"Mere fact that one goes to sleep while driving automobile is proper basis for inference of negligence, sufficient to make out prima facie case, and sufficient for recovery if no circumstances to excuse or justify conduct are proven, because it lies within driver's power to keep awake or cease from driving."

On page 435 of the Atlantic Reporter the court said:

"(7) In any ordinary case, one cannot go to sleep while driving an automobile without having relaxed the vigilance which the law requires, without having been negligent. It lies within his own control to keep awake or cease from driving. And so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case, and sufficient for a recovery, if no circumstances tending to excuse or justify his conduct are proven. Carlson v. Connecticut Co., 85 Conn. 724, 112 A. 646; Sliwowski v. New York, N. H. & H. R. Co., 94 Conn. 303, 309, 108 A. 805; 1 Shearman and Redfield, Negligence, §58a et seq.; posthumous paper of Ezra Ripley Thayer, 29 Harvard Law Review, 807. If such circumstances are claimed to have been proven, it then becomes a question of fact whether or not the driver was negligent; and, in determining that issue, all the relevant circumstances are to be considered, including the fact that ordinarily sleep does not come upon one without warning of its approach. 5 Wigmore, Evidence (2d Ed.) §2491. The trial court was right in leaving the issue to the jury as one of fact, but it might properly

have gone farther and called attention to the last-mentioned feature of the case."

In People v. Robinson, 253 Mich., 507, 235 N. W., 236, which was a criminal proceeding in which the facts are similar to the facts in the case at bar, and where the defendant was charged with negligent homicide arising out of the operation of an automobile upon a public highway, the trial court was affirmed on its refusal to charge as follows:

" 'You are instructed that if the respondent, Maurice Robinson, was tired, worn out, and lost consciousness by falling suddenly to sleep and the impact or collision occurred in consequence thereof, then your verdict should be not guilty in this case. You are instructed in view of the previous language that the negligent homicide statute is predicated on negligence, or, in other words, a failure to use care and caution' that the ordinary prudent man would use and that where the cause was brought about by the respondent's falling to sleep on account of being worn out and weariness and in consequence thereof suddenly falls asleep, then there can be no negligence within the meaning of the negligent homicide statute, and your verdict should be not guilty. In other words, if the sole proximate cause of the collision in this case was caused by the respondent being worn out; fatigued and losing consciousness by falling asleep, then there is no criminal negligence.' "

In the cited case the testimony of the State tended to show that the defendant had attended a dance until two o'clock A. M. and that while at the dance he drank beer. When the dance was over the defendant, accompanied by other persons, drove from Benton Harbor to Muskegon, where they drank more beer. They started home at four o'clock A. M. On the way home the defendant was driving and got on the wrong side of the road and collided with an automobile approaching from the opposite direction. The court, in discussing the requested instruction in light of the factual development in the case, on page 237 said:

"[1, 2] This request is not a correct statement of the law in regard to the negligence of one falling asleep while driving an automobile. He may not always be chargeable with negligence for what he does while asleep, but the rule is different where he voluntarily puts himself in such a physical condition that he cannot stay awake. The danger of driving an automobile on the highways by one who is not in possession of his faculties is a matter of common knowledge. This defendant knew that he had been going without sleep, that he had been drinking that which would disturb his faculties, and that he was not in a fit condition to drive a car. An ordinarily prudent man would have known it. An ordinarily prudent man would have known that this or some other accident would probably happen while driving in that condition. So, under the circumstances as shown by his own evidence, the defendant was negligent in falling asleep. He was negligent in trying to drive a car when a man of ordinary prudence would have known it was not safe for him to do so. It was negligent for him to drive when he was weary and sleepy. It was his duty to stop driving until he had overcome his weariness and regained control of his faculties. The court

did not err in refusing to submit the defendant's theory on the question of negligence. The evidence sustains the jury's finding."

We paraphrase the language of the court in the cited case by stating that in the instant case the defendant knew that he had insufficient sleep during the previous 24 hours, that he had been drinking and that his drinking had disturbed his faculties and, according to a witness called by the defendant, he was in no condition to drive an automobile; that an ordinary prudent person would have known it. In the instant case the evidence tends to show that the defendant failed to stop before entering the intersection; that he operated the automobile without due regard for the other occupant of the automobile so as to endanger the life, limb or property of the persons in the lawful use of the highway; and was driving the automobile while under the influence of intoxicating liquor, all contrary and in violation of the State traffic code. The defendant failed to establish a legal excuse for such violations. Under the facts in this case, the defendant can not escape criminal responsibility for his acts by stating, "I don't remember what happened," or "I don't know whether I blacked out and went to sleep," or "I just don't know." This question is the subject of a lengthy annotation in 28 A. L. R. (2d), 35. In our opinion the refusal to give the requested instruction No. 5 did not constitute prejudicial error.

In its general charge the court properly instructed the jury on all the issues in the case. It is not sufficient to show that the jury might have **possibly** been misled. In such case the question is: Was the jury **probably** misled in a matter materially affecting the complaining party's substantial rights? **Ohio Farmers Insurance Co. v. Cochran, 104 Oh St 427, 135 N. E., 537; Eaton v. Askins, 95 Oh Ap 131, 118 N. E. (2d), 203.**

We find no prejudicial error in the general charge; neither do we think the refusal to give requested instructions after the general charge was given to the jury constituted prejudicial error.

Finally, under the Code no judgment of conviction shall be reversed for any cause unless it appears affirmatively from the record that the accused was prejudiced thereby or was prevented from having a fair trial. **Sec. 2945.83 R. C.** In our opinion the defendant had a fair trial, and there is ample evidence supporting the conviction.

We find no assignment of error well made. Judgment affirmed.

BRYANT, PJ, DUFFY, J, concur.