[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT ANDMOTION FOR JUDGMENT NOTWITHSTANDING VERDICT
The defendants, The Sherwin-Williams Company ("Sherwin-Williams") and Richard Wielock ("Wielock") have filed a Motion to Set Aside the Verdict and a Motion for Judgment Notwithstanding the Verdict with respect to the jury verdict rendered in this case on October 5, 1994 in favor of the plaintiff, Henry Davies Miller, on the counts of the complaint which alleged negligence, and in favor of the defendants on counts of the complaint which alleged product liability, wanton and reckless misconduct, and loss of consortium.
The defendants claim that the verdict should be set aside because of various unfair and prejudicial statements by the plaintiffs and their counsel and witnesses during the course of the trial. They claim that the court should enter a judgment in their favor notwithstanding the jury verdict in favor of Miller because the plaintiffs failed to remove the issue of proximate cause from the realm of speculation and surmise.
The following is a summary of the pertinent evidence introduced during the trial. Miller had owned and/or operated NAPA auto parts stores in Clinton, Guilford and Madison for many years prior to 1992. He had also suffered from chronic respiratory problems, including asthma, since 1979. In connection with his medical treatment for those problems he had been taking corticosteroids for approximately thirteen years in 1992. On May 6, 1992 he attended a paint demonstration put on by Sherwin-Williams, who manufactured the automobile paint products, which CT Page 3739 were sold by the Clinton NAPA store, which Miller was then managing.
The demonstration was held at the home of Wielock, who was Sherwin-Williams' sales reprentative [representative]. At the demonstration Miller and other participants each practiced spraying various types of automobile paint and paint hardeners. The paint hardeners contained hexamethylene diisocyanate (HDI). HDI and other isocyanates can cause respiratory and other health problems in human beings if they are inhaled.
Prior to the paint demonstration Miller requested that Wielock provide him with a so-called fresh air respirator because he was aware that spray paint could be generally harmful. When Miller arrived at the paint demonstration he learned that Wielock did not have a fresh air respirator, but only charcoal filter respirators. Charcoal filter respirators are not as effective as fresh air respirators in filtering out HDI. Miller elected to participate in the demonstration notwithstanding the lack of the fresh air respirator.
The cans of paint hardener used at the paint demonstration all contained the following warning:
 DO NOT USE IF YOU HAVE CHRONIC (LONG TERM) LUNG OR BREATHING PROBLEMS, OR IF YOU HAVE EVER HAD A REACTION TO ISOCYANATES.
At the paint demonstration the participants, including Miller, sprayed the HDI-containing hardeners about thirty seconds each for a total of about three minutes. Within several hours after Miller arrived home from the demonstration, he began experiencing a severe tightening in his chest. Thereafter he became extremely hoarse, had difficulty breathing, working and engaging in any physical activities whatsoever. As a result of these symptoms, he was unable to continue as the manager of the NAPA store. When the weather turned cold Miller's lungs could not tolerate the cold air and he had to move temporarily to Florida during the winter of 1992-1993. As a result of his physical condition Miller subsequently decided to move to Florida permanently.
Miller had chronic lung and breathing problems prior to the paint demonstration. However, he testified that he did not believe that he had such problems at the time of the paint demonstration. Miller also testified that he did not read the CT Page 3740 warnings on the paint hardener cans and if he had read them, he would not "be here," implying that he would not have participated in the demonstration and, therefore, would not be in court in connection with the lawsuit.
Miller had sold paint hardeners manufactured by Sherwin-Williams for many years in NAPA stores. He was known as the "answer man" at his NAPA store because he was so knowledgeable about all of the products sold there. He did not use the paint hardeners in the course of his work at the NAPA store.
Wielock knew that Miller requested a fresh air respirator, but did not know why and was unaware of Miller's extensive medical history. Wielock did not read the warnings on the paint hardener can to Miller or give Miller any other warnings about potential dangers of isocyanates. He did provide all participants with protective clothing and charcoal filter respirators. Wielock told Miller that he thought Miller would be "alright" if he used a charcoal filter respirator. Wielock had had seven other demonstrations prior to that attended by Miller. He had never changed the charcoal filters on the respirators. The demonstration was held in Wielock's garage, which was vented by means of a fan.
Ed Hall, a witness who attended the demonstration on the same date as Miller, testified that he wore a charcoal filter respirator similar to the one worn by Miller and that after the demonstration his teeth were covered with green paint which had come through the respirator. The charcoal filter respirators used at the demonstration were not approved for use with isocyanates because such respirators allow one tenth of the contaminants outside the respirator mask to enter the mask.
Dr. William Beckett, a physician from Yale University School of Medicine, who was Board Certified in internal medicine, pulmonary medicine and occupational medicine, and Judy Sparer, an industrial hygienist employed at the Yale Occupational Medicine Clinic, testified that spraying of isocyanate-containing automobile paint, even in a paint spraying booth which had more ventilation than Wielock's garage, generates ambient air levels of isocyanates which exceed by many times the permissible OSHA standards. Dr. Mark Cullen, director of the Yale Public Health Clinic and Dr. Garland Jackson, a fellow at the Yale Occupational Medicine Clinic in 1992, both treated Miller at the Yale Occupational Medicine Clinic. They and Dr. Beckett and Ms. Sparer all testified that it CT Page 3741 was very probable that Miller breathed in a sufficient quantity of HDI to cause a person who was an asthmatic to experience a severe, prolonged reaction such as the one experienced by Miller.
The defendants, through their attorney, did an excellent job of impeaching the credibility of the opinions offered by Drs. Cullen, Beckett and Jackson by eliciting from them during cross examination that Miller had not informed them of the extent of his preexisting asthma and respiratory problems, or his prolonged steroid usage prior to the demonstration. They also elicited admissions from those doctors that their initial opinions about the cause of Miller's physical condition after the demonstration were given before they were aware of Miller's complete medical history. The doctors also admitted that they could not say for certain whether Miller had breathed in any isocyanates at the demonstration. Dr. Cullen admitted that Miller's condition could have been attributable to causes other than isocyanate exposure.
The defendants introduced the testimony of Dr. Emil Bardana, Jr., who attributed Miller's condition after the paint demonstration to his doctor's overly rapid reduction in the large dosages of corticosteroids which Miller had been taking since 1979 for his asthma.
Directed verdicts and judgments notwithstanding the verdict are not favored. Iseli Co. v. Connecticut Light Power Co.,211 Conn. 133, 140, 558 A.2d 966 (1989). A jury verdict may be set aside and judgment directed only if the court finds that the jury could not reasonably and legally have reached the conclusion that it did. John T. Brady Co. v. Stamford, 220 Conn. 432, 441,599 A.2d 370 (1991).
The defendants argue that the plaintiff failed to remove the issue of proximate cause from the realm of speculation and surmise because none of the experts who testified on behalf of Miller could say for certain whether Miller actually breathed in any isocyanates on the day of the paint demonstration. Relying on cases such asBoehm v. Kish, 201 Conn. 385, 389-90, 517 A.2d 624 (1986) andPalmieri v. Macero, 146 Conn. 705, 155 A.2d 750 (1959), the defendants argue that the plaintiff has not adequately established the "cause in fact" aspect of proximate cause.
In Boehm the defendant tavern served the plaintiff alcoholic beverages when he was already extremely intoxicated. Thereafter the plaintiff drove his automobile, was involved in an accident as CT Page 3742 a result of which he became a quadriplegic. The plaintiff brought an action against the tavern for wanton and reckless misconduct. At trial the plaintiff testified that he remembered driving his automobile, reaching down to retrieve something, and then waking up with ambulance personnel in attendance. Neither the plaintiff, nor any other witness testified as to how the accident occurred. The trial court directed the jury to return a verdict in favor of the defendant because the plaintiff had not established causation in fact. The Court affirmed the trial court's decision.
In Palmieri, supra, the plaintiff passenger testified that he had been asleep in the car driven by the defendant's decedent. He was awakened only when the car struck a guardrail before going over an embankment. There were no witnesses to the accident, which the driver did not survive. The jury returned a verdict in favor of the plaintiff. The trial court rendered a judgment notwithstanding the verdict. The judgment was affirmed by the Connecticut Supreme Court, which reasoned that any one of a number of forces might have impelled the car into the guardrail and, therefore, the jury's conclusion that the negligence of the driver was the proximate cause of the accident "was without evidential basis and could only have resulted from guesswork." 146 Conn. at 707-708.
The Court's holding in Boehm and Palmieri must be contrasted with that in Blados v. Blados, 151 Conn. 391, 198 A.2d 213 (1964), where the plaintiff alleged that her decedent had died as a result of the defective condition of the defendant's stairway. The decedent was found dead at the base of the stairway. No one saw how, where, when, why or even if he fell off of the stairway. The medical examiner opined "that the decedent had fallen a distance greater than his height and had struck his head on the walk at the place where his body was found. There was evidence to show that the stairway was steep, at an angle approximating forty-five degrees; the risers of the stairs were uneven and of varying heights; the treads were of varying widths; the handrail was insufficient, of improper height and unsafe. A leader from the roof projected into the stairway for several inches, creating a hazardous condition." 151 at 394. The jury returned a verdict for the plaintiff. The trial court directed a verdict for the defendant on the ground that there was no basis in the evidence for a finding that the negligence of the defendant in maintaining the stairway had any connection with the decedent's injuries and death. The sole question on appeal was whether the jury could have reached the conclusion that the decedent's death resulted from injuries sustained in a fall from the stairway which was caused by CT Page 3743 the defendant's failure to exercise the care required by law. In reversing the judgment of the trial court the Supreme Court stated:
 It is true that there was no direct evidence to show that the decedent was ascending the stairway or that he fell from it. Nevertheless, triers of fact must often rely on circumstantial evidence and draw inferences from it. Cayer v. Salvatore, 150 Conn. 361, 363, 189 A.2d 505. There is no rule of law which forbids the resting of an inference on facts whose determination is the result of other inferences. Sliwowski v. New York, N.H. H.R. Co., 94 Conn. 303, 310, 108 A. 805; Ruerat v. Stevens, 113 Conn. 333, 338, 155 A. 219; State v. Foord, 142 Conn. 285, 294, 113 A.2d 591. Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. LeBlanc v. Grillo, 129 Conn. 378, 381, 28 A.2d 127.
152 Conn. at 395.
It is not necessary in order to establish his case that the plaintiff present evidence that it was certain that he breathed HDI at the paint demonstration. Terminal Taxi Co. v. Flynn, 156 Conn. 313,318, 240 A.2d 881 (1968). The plaintiff may satisfy his burden of persuasion if the evidence induces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact sought to be proved is true. Busker v. UnitedIlluminating Co., 156 Conn. 456, 458, 242 A.2d 708 (1968). A plaintiff may rely on circumstantial evidence and expert testimony to prove causation. Slepski v. Williams Ford, Inc., 170 Conn. 18,22, 346 A.2d 175 (1975).
In this case no witness could say for certain whether Miller breathed in any HDI. However, several experts gave opinions that it was probable that he did. No one could say for certain that Miller's severe health problems were caused by isocyanates. Dr. Bardana offered a convincing explanation that the symptoms were caused by rapid steroid withdrawal. However, the jury was not required to believe Dr. Bardana and could have believed the various experts who stated that it was probable the Miller's health problems were due to isocyanate exposure at the defendants' paint demonstration. CT Page 3744
There was evidence from which the jury could have inferred that the plaintiff Miller did breath in HDI at the paint demonstration, and that the HDI caused the health problems that ensued. Therefore, this court cannot properly enter judgment in favor of the defendants.
The defendants have further argued that the plaintiff failed to prove that Wielock's failure to warn him about the danger of the paint at the demonstration could not have caused the plaintiff's injuries because, essentially, Miller would not have heeded the warning. As stated above, there was evidence that Miller did not consider himself to be a person with respiratory problems at the time of the paint demonstration. Therefore, any warning about the danger of the use of the HDI-containing paint hardeners by persons with respiratory problems might well have gone unheeded by Miller. However, there was also evidence that Miller would not have participated in the paint demonstration if he had been aware of the information on the label on the paint hardener can. Moreover, the plaintiff alleged that the defendants were negligent in that they did not provide Miller with a fresh-air respirator, they supplied Miller with a respirator which was inadequate to protect him from isocyanates in the spray paint and Wielock told Miller that he would be protected by the charcoal filter respirator. Therefore, any lack of evidence to support a causal connection between Wielock's failure to warn Miller and his injuries would not necessarily justify a judgment in favor of the defendants.
There was sufficient evidence from which the jury could reasonably have found that the defendants were negligent in the other manners set forth above.
In support of their Motion to Set Aside the Verdict, the defendants argue that the following conduct by the plaintiff, Miller, or his counsel deprived the defendants of a fair trial. Prior to the trial Miller disclosed settlement amounts which had been discussed between the parties to a reporter from the TheMiddletown Press. Thereafter, an article appeared in that newspaper which referred to the aforementioned settlement amounts.
Prior to the trial the court had admonished the jurors to avoid media accounts of the case. One juror indicated that someone at her place of employment had mentioned to her that an article about the case was in The Middletown Press, but stated that she had not read it. CT Page 3745
During her opening statement, plaintiff's counsel improperly referred to the Bhopal disaster[1] in discussing the plaintiffs' claims against the defendants for the sole purpose of inflaming the jury. The defendants also claim that the plaintiffs improperly attempted to elicit from an expert chemist, Dr. Armand Casparian, information about methyl isocyanate, which was the type of isocyanate involved in the Bhopal disaster, but was not contained in any of the products used at the paint demonstration. Thereafter, Dr. Cullen, one of the plaintiffs' expert witnesses, again referred to the Bhopal incident in describing the potential toxicity of isocyanates.
Immediately after Dr. Cullen's reference to Bhopal, at the request of the defendants' attorney, the court instructed the jury that any reference to the Bhopal incident was improper because the chemical compound involved in the Bhopal incident was different from that involved in the case at issue and because the circumstances involved in the present case were very different from those in the Bhopal incident.
The defendants claim that they were denied a fair trial for the following additional reasons. Plaintiff, Patricia Miller, Miller's wife, likened isocyanates to asbestos during her testimony. During final argument to the jury the plaintiffs' counsel urged the jury to "send a message" about Sherwin-Williams' products and also advised the jury that it should not be concerned that a verdict against Wielock would harm him personally because Sherwin-Williams would have to pay anyway. During final argument the plaintiffs' counsel also made reference to the testimony of Jeff Burr with respect to an alleged exposure of Miller to isacyanate-containing paints, which the court had previously excluded from evidence.
The defendants requested the court to give corrective instructions concerning the foregoing and the court complied with the request.
A verdict should be set aside if there has been manifest injury to a litigant, and it is singularly the trial court's function to assess when such injury has been done since it is only that court which can appraise the atmosphere prevailing in the courtroom. Yeske v. Avon Old Farms School, Inc., 1 Conn. App. 195,205, 407 A.2d 705 (1984); Pisel v. Stamford Hospital, 180 Conn. 313,322, 430 A.2d 1 (1980); Cavallaro v. Offen, 29 Conn. Sup. 20,21, 269 A.2d 83 (1969). CT Page 3746
The defendants did not move for a mistrial after any of the improprieties of which they now complain. The Connecticut Supreme Court has looked with disfavor on attempts to claim unfair prejudice after an unfavorable verdict by moving to set aside the verdict where there was no prior motion for mistrial. InArchambeault v. Jamelle, 100 Conn. 690, 124 A. 820 (1924), the defendants claimed that plaintiff's counsel improperly displayed excluded evidence and made improper remarks during closing argument. After a verdict for the plaintiff the defendants moved to set aside the verdict and for a new trial on the grounds that the foregoing misconduct deprived them of a fair trial. The trial court denied the motion. The Supreme Court upheld the decision of the trial court and stated:
 We think that the action of the trial judge was sufficient to avert any harm to defendants in the consideration of the jury on account of these incidents, especially in view of fact that it does not appear from the finding that defendants' counsel considered the matters of sufficient importance to then move for a dismissal of the jury from further consideration of the case. That was the proper time and method, rather than to first take the chance of a favorable verdict by the jury.
100 Conn. at 695. In the following cases the Court also cited the failure to previously move for a mistrial as one basis on which to deny a motion to set aside the verdict on the grounds of prejudicial conduct: Furber v. Trowbridge, 117 Conn. 478,169 A.2d 43 (1933); Altieri v. Peattie Motors, Inc., 121 Conn. 316, 321,185 A.2d 75 (1936); Ferino v. Palmer, 133 Conn. 463, 465-66,52 A.2d 433 (1947); Jacek v. Bacote, 135 Conn. 702, 706, 68 A.2d 144
(1949).
The impact of improper arguments can usually be nullified by the court's curative instruction. Fonck v. Stratford, 24 Conn. App. 1,584 A.2d 1198 (1991). In Spiess v. Traversa, 172 Conn. 525,528, 375 A.2d 1007 (1977) the court's curative instruction was held to have cured any unfair prejudice that could have resulted from improper references to the plaintiff's poverty, large family and mentally impaired child. In Bryar v. Wilson, 152 Conn. 162,164-65, 204 A.2d 831 (1964) the court's curative instructions were held effective in overcoming any prejudice induced by counsel's improper arguments. CT Page 3747
In this case the jury awarded the plaintiff a total amount of damages which was substantially lower than the amount of economic damages for which the plaintiff presented evidence during the trial. The jury awarded the plaintiff a total of 285,000 dollars damages and assessed 50% comparative negligence against Miller, which had the effect of reducing the damages to 142,500 dollars.
The plaintiffs put on evidence at trial to show that as a result of his injuries Miller lost eighty thousand dollars of wage income and sustained a loss of earning capacity of approximately four hundred thousand dollars. The plaintiffs also presented evidence of Miller's serious illness and disability, which could have formed the basis of an award of non-economic damages which was far greater than the amount awarded by the jury. Based on the foregoing the amount of the verdict does not reflect that the jury was at all inflamed or prejudiced by the plaintiff's improper references.
For the reasons set forth above the Motion to Set Aside the Verdict and the Motion for Judgment Notwithstanding the Verdict are denied.
By the Court, Aurigemma, J.